Ruffin, C. J.
 

 The Court is of opinion, the decision was right. We, agree, that no appeal lies in such a case for the purpose of a re-hearing in the Superior Court, but that the decision upon the facts by the County Court and freeholders is final. It was undoubtedly so under the act of
 
 1777,
 
 ch. 122, which gave this peculiar proceeding, and which is silent as to allowing an appeal; and the general provisions for appeals in the act of that year, ch. 115, sec.
 
 75
 
 and
 
 77,
 
 we have held, do not apply to summary and peculiar proceedings, not according to the course of the common law, but prescribed by statute under particular circumstances.
 
 Raleigh and Gaston Rail Road
 
 v.
 
 Jones,
 
 1 Ired.
 
 24,
 
 —Collins v.
 
 Haughton, 4
 
 Ired. 420. It is insisted, however, for the appellee in this Court, that under the Rev. St. ch.
 
 74,
 
 sec. 17, appeals are given “in all cases arising under that act,” and that, consequently, this case is included. Rut we think that section is, by necessary construction, to be confined to those parts of the act, which relate to the overflowing of land by mill ponds and the recovery of damages therefor. By the act of 1809, upon the petition of a person aggrieved by the erection of a mill, the damages were to be assessed by a jury on the premises, and an appeal was expressly given to the Superior Court in that case; but it was not provided how or where the trial should be, whether in Court, or on the premises by a second jury, convened under the order of the Superior Court — which, indeed, would be but appealing from one jury to another, each being unaided by the advice of the Court. To remove doubts on that point arid effectuate what was, no doubt, the intention from the first, the act of 1813, ch. 863, was passed, “to amend the act of 1808 and, by the second section, it was provided, that in cases arising
 
 under the said act
 
 the trial
 
 *484
 
 of the appeal should be at bar. That is the origin of the 17tfx Section of the Rev. St. ch. 74, and shews its true sense. Besides, the very nature of the provision shews that it cannot cm|;il,ace sucj1 a proceeding as that now before us; for the act contemplates only the case of an assessment by a jury of damages from the overflowing of land, which requires no view, while the principal duty of the freeholders under the act of 1-777, is to lay off an acre of land on opposite sides of the stream, as well as to value thém,- and to that it is indispensable to be on the spot. The direction, therefore, for a trial at bar by a juiy, is altogether inapplicable ; and it coiild' not be intended, that there might be an appeal, in order mere-' ly, that the Superior Court should appoint four other freeholders to go on the premises, who would- not be more likely to decide there according to the law and right of the case,- thaii the first set. And this is put beyond all cavil by Rev. St. ch. 4, sec. 4, which, in enumerating the cases, in which there may be appeals, confines the appeal, in cases of controversies about mills, to the single one of dissatisfaction with the verdict of a jury, on a petitition for an injury by the erection of a mill. We are satisfied, therefore, that Brooks was not entitled to an appeal, with the view of entering into the merits of this dispute in the Superior Court; for the legislature does' not contemplate, that the decision of the freeholders,' nor of the justices, as to the matter of fact, should be annulled by an appeal.- And if the only purpose of the
 
 certiorari
 
 was that of being a substitute for an appeal of that kind, we should hold, that it ought to have been quashed upon the appellant’s motion: since the County Court did no wrong by refusing the appeal. That is, indeed, the ordinary use of the writ in this State, because, in almost every case our law gives an appeal, upon which there is a trial
 
 de novo
 
 or a re-hearing in the appellate Court, and, when deprived of the right of appeal, the party has a right to a certiorari as a substitute for it. But that is not the only application of this remedy in use here; much less allowed by the common law. It has often been used as'a writ of false judgment,, to correct errors in convie--
 
 *485
 
 tfohs'and judgments of justices of the peace out of Court. — But it is not restricted even thus far; for at' common law it is, as Mr. Chitty observes, 2 Genl. Pr. 374, “a legal maxim that all
 
 judicial
 
 proceedings of justices of the peace, upon which they have decided by conviction or
 
 order
 
 (such as an. illegal order for turning the highway or the like) whether at general or special sessions, or individually, and either by general or particular statute, are of
 
 common right
 
 removable into the King’s Bench by
 
 certiorari,
 
 unless that remedy has been expressly taken away by particular enactment.” It is slated, that even when a statute says, that particular case*;, shall be finally determined in the' quarter sessions,- yet that does not oust the jurisdiction by
 
 certiorari,
 
 because the court’ understands therefrom,'that it was meant merely; that the’ facts should not be ré-examined. Therefore, although an ap-. peal, which isfiri the nature of a new trial .on .the facts and merits, cannot be sustained, unless expressly given by statute, ' the Superior'Court will always control inferior magistrates afid* tribunals, in matters for which a'writ of error lies not,
 
 by
 
 certiorari, to bring up their judicial proceedings to be re- . viewed in the matter of law; for in'such base, “ the
 
 certiorari
 
 is in effect a Writ of error,” as all that can Ee discussed in the court above are the form and sufficiency of the proceedings, as they appear upon the face of them. The Superior Court, being our highest court of original jurisdiction',1 has always exercised the superintending control, which the King’s Bench has in England, as far as necessary to the preservation of the common right of the citizen; Such a jurisdiction is indispen-. sable in a free country, where the principle of arbitrary decision is not acknowledged, blit the law is held to be the true and Only standard of justice, it néver could be intended by1' the Legislature, that summary adjudications of justices out of court, or in session, should, however erroneous in point of ' law, conclude the citizen ; and although the party affected by-them'may, perhaps, insist that they are void and resist them'
 
 in pais,
 
 or sue those who act under them, it is mucji better to '; allow him at once and direetly to subject them to revision and -'’
 
 *486
 
 reversal, if found to be against law. It wasj doubtless, tipoii ground that the principle came to be incorporated, as a maxim, into the common law of England. It is equally essential to the uniformity of decision, and the peaceful and regular administration of the law here, that there should be some mode for correcting the errors, in point of law, of proceedings not according to the course of the common law, where the law does not give an appeal; and therefore, from necessity, we must retain this use of the
 
 certiorari.
 
 Suppose, for example, that the County Court had ordered, that the original petitioner should have leave to erect a mill on Brooks’ land without paying the valuation 5 or that the order was, that the freeholders should lay off and value an acre of the defendant’s land, and not one of the petitioner’s also, whereby the defendant wottld be deprived of the privilege given to him by law of getting from the court leave to build a mill, instead of the petitioner; or that the petitioner should pray for the condemnation of an acre of land of the defendant, not lying on the opposite side of the river from the land of the petitioner, but Containing a good mill seat on the same side With the petitioner, above or below, and that court should so order: in all those instances, it is plain, that the order would be in dired-violation of the act and of common right; and, therefore, as no appeal is given, it must be the duty of the Superior Court to correct the Wrong by superseding and quashing the orders Whether there be any such error in this case, we have not the means of judging, nor, indeed, is it open to this court, upon the present appeal to say. For the appeal is from an interlocutory order on a Collateral motion, upon which the whole record is not necessarily sent up, but only such parts as his Honor thought useful to the question presented for our decision, which is, therefore, confined to that single question. We have not, eVen, in this case, the report of the freeholders, on which the order of the court was founded; so that it is clear it was intended the action of the court should he restricted to the naked point, whether the
 
 certiorari
 
 ought to be quashed
 
 quia impróvido
 
 emanavit, or ought to be allowed
 
 fot my
 
 
 *487
 
 purpose, And as we think clearly, it is a proper remedy to correct any error in the matter of law in this proceeding, though in that respect only is it proper, we hold that the decision of the Superior Court, appealed from, was right, and direct that it he certified accordingly. .
 

 Per Curiam, Ordered accordingly,