DOUGLAS, J., dissenting.
The plaintiff instituted this proceeding against the defendant by filing his petition in the office of the clerk of the Superior Court and issuing a summons in accordance with the provisions of chapter 30, section 1297, of the Code, alleging ownership of a tract of "swamp, flat or low land" — particularly described — known as the "Pigford farm." That the defendants were the owners of said land adjoining and "below the said Pigford farm"; that a portion of his land was ditched, cleared and under cultivation and was subject to inundation and sog. It could not be drained except by clearing or cutting out a canal known as the Strawberry Canal, etc., which was cut through the defendant's land, etc., and (448) constitutes the only natural outlet to the waters of Pigford farm. The plaintiff prayed that commissioners be appointed pursuant to chapter 30 of the Code.
The defendants Armstrong and Mrs. Durham's answer, admitting the ownership of the land by the plaintiff and defendants, denies that the plaintiff's land is "swamp, flat and low land." They deny that the plaintiff's land is subject to inundation, and that it cannot be conveniently drained except in the manner pointed out by the petitioner. They also deny certain averments in regard to the use of the canal. They aver that the canal is not cut through their land; that it stops some distance before it reaches the plaintiff's land. They allege that the plaintiff has diverted his water and has violated certain contracts, and they say that the plaintiff "has been harassing these defendants with suit after suit in court, and the said suits have been appealed to the Supreme Court of North Carolina, and it has been decided more than once that the petitioner has no right to drain into the Strawberry Canal, and these defendants plead the same as an estoppel against the petitioner having any relief herein."
They further say that the petition is not filed in good faith and for the bona fide purposes as alleged in said petition, but for the purpose of obtaining for the petitioner the right to drain the Strawberry Canal water which the plaintiff has diverted from its natural course, and thereby injured the defendant, *Page 326 
and that the petition is filed for no other purpose than to harass and annoy the defendants, etc.; that the plaintiff has other means of draining his land than through the defendant's land.
When the cause came on for hearing upon the petition and answer, the defendants made a motion that the cause be sent to the Superior Court and placed upon the trial docket to (449) try the issues of fact raised by the answer. They also insisted that a plea in bar had been set up in the answer which was to be passed upon before any commissioners could be appointed. The clerk allowed the motion and transferred the cause to the civil issue docket of the court, and the plaintiff excepted and appealed to the judge.
At January Term, 1904, of the Superior Court, the judge presiding affirmed the judgment of the clerk, denied the plaintiff's motion that commissioners be appointed, and ordered certain issues to be submitted to the jury. The plaintiff excepted and appealed.
It is a source of regret and surprise that the procedure prescribed by the drainage laws (the first of which was enacted at the session of the General Assembly of 1795, chapter 436) should continue to be in doubt and uncertainty, resulting in delay and expense. The difficulty has doubtless arisen from the changes wrought in our judicial system and mode of procedure. The substantial features of the law have been retained in the several Codes of the statute law of the State. Chapter 40, Revised Statutes, was brought forward in the Revised Code; no change in the procedure was made until 1868. The original statute required the petition to be filed in the county court, and provided for the appointment of twelve jurors who were required to make their report to the county court, "which shall be recorded in said court." The construction of the act in regard to the power and duty of the court, and the right of the party dissatisfied to appeal, came before this Court in Collins v. Houghton, 26 N.C. 420. The Court, adopting the (450) principle announced in R. R. v. Jones, 23 N.C. 24, regarding the construction of statutes providing for the condemnation of land for railroads, says that the county court could "only direct the verdict to be recorded or order a new jury, and from its action no appeal could be taken." Nash, J., said: "The jury thus constituted is the special tribunal to whom *Page 327 
by the act the power exclusively belongs to say whether the land does need to be drained, and if so, what ditches shall be dug, and the amount of the damage to be paid to the owners of the land through which they may pass." The Court held in R. R. v. Jones, supra, that the general law in regard to appeals had no application. It was, however, in that case said: "In denying the parties the right of appeal in cases of this kind we do not deny them the privilege of having their cases heard before a superior tribunal. Any error which may be committed by the county court in its action may be revised and corrected in the Superior Court through the instrumentality of a writ of error or a certiorari in the nature of a writ of error." The practice under the provisions of the act permitting the condemnation of land for the site of a public mill (Code, ch. 43, Laws 1777, ch. 122) was considered by the Court in Brooks v. Morgan, 27 N.C. 481. It was held that the general provisions for appeals did not apply to "summary and peculiar proceedings not according to the course of the common law, but prescribed by statute under peculiar circumstances." The language ofGaston, J., in R. R. v. Jones, supra, is: "The mode of procedure was intended to be cheap and expeditious, all which purposes would be frustrated by allowing either party the unlimited right of appeal."
This construction of the drainage act was uniformly followed by this Court prior to the change in our judicial system in 1868. Upon the filing of the petition the county court appointed the jury. They went upon the land, decided upon (451) personal inspection the necessity of the ditch, located it and assessed the damage to be paid by the petitioner. They made their report, and after the adoption of the amendment made by the Revised Code, ch. 140, the court "confirmed the report unless good cause be shown to the contrary." Stanly v. Watson, 33 N.C. 124.
In Skinner v. Nixon, 52 N.C. 342, Pearson, C. J., examines the provisions of the act and discusses them at length, saying that the action of the county court was subject to be reviewed in the Superior and Supreme Courts, "not by way of unlimited appeal, which would vacate as well the report of the commissioners as the judgment of the county court, and make it necessary for the Superior Court to proceed de novo, but by way of writ of certiorari in the nature of a writ of error, which would be in effect a limited appeal — in other words, an appeal restricted to the questions which the county court was authorized to pass upon — leaving the report of the commissioners open to be confirmed or set aside according to the decision reviewing the *Page 328 
action of the county court." In Shaw v. Burfoot, 53 N.C. 344, the petition was dismissed because it did not conform to the provisions of the statute. In Brooks v. Tucker, 61 N.C. 309, the report was set aside because it failed to conform to the statute. These cases were reviewed for error apparent on the record. They were brought up to the appellate court by a limitedappeal, as pointed out by Pearson, C. J., in Skinner v.Nixon, supra. Norfleet v. Cromwell, 70 N.C. 634; 16 Am. Rep., 787, was a "civil action upon a covenant," and not under the drainage law. The able and interesting discussion of Mr. Justice Rodman is upon the rights of the parties in regard to the easement. In Gamble v.McCrady, 75 N.C. 509, the proceeding was brought under the provisions of chapter 39, Battle's Rivisal, being chapter (452) 137, Laws 1869-'70. Rodman, J., noted that chapter 40, Revised Code, had been omitted from the revisal and the act of 1869-'70 substituted therefor. This, however, did not operate to repeal chapter 40 of the Revised Code. This chapter, with all its amendments and other drainage laws, is re-enacted in chapter 30 of the Code of 1883. The petition, with the same averments required by Laws 1795, ch. 436, must now be filed in the "Superior Court," that is, before the clerk, and a summons issued and served. Upon the hearing of the petition the court shall appoint commissioners. Sections 1298 and 1299 prescribe the duties and method of the procedure of the commissioners. Section 1324 enacts that "the proceeding is made the same as prescribed in other special proceedings." This Court undertook to harmonize the several statutes relating to the practice in these cases in Durden v. Simmons, 84 N.C. 555. While it was there held that the answer did not raise any issue as to title, it is said that if it had done so such issue should be tried before proceeding to the appointment of commissioners. The reason is obvious, as pointed out bySmith, C. J. It would seem that if in cases of this kind the answer raised an issue of fact, the decision of which in favor of the plaintiff was essential to the further prosecution of the petition, the clerk would stay proceedings until such issue was decided in accordance with the practice in other special proceedings. If questions of law are presented and decided by the clerk before the appointment of the commissioners, an appeal directly to the judge may be taken, and his decision will be certified to the clerk, who will proceed in the cause as directed. This course harmonizes the language of the statutes with the construction put upon section 1892 of the Code regarding petitions for partition. This practice should be strictly confined to defenses which lie at the threshold of the *Page 329 
cause and pleas in bar. In respect to questions, the (453) decision of which are committed to the "special tribunal" provided by the statute, the clerk should proceed to appoint commissioners. When the report of the commissioners comes in exceptions to it may be filed and heard by the clerk. An appeal may be taken from his judgment and his rulings reviewed, as was said by Pearson, C. J., inSkinner v. Nixon, supra, being an appeal restricted to questions which the (clerk) county court was authorized to pass upon, leaving the report of the commissioners open to be confirmed or set aside according to the decision reviewing the action of the court (clerk). In this way, while the rights of the parties to have the action of the clerk reviewed are secured, useless and expensive delays are avoided, and effect is given to section 1324 of the Code. We do not find in chapter 30 the language contained in section 1946, construed in R. R. v. Newton, 133 N.C. 132, prescribing the procedure in petitions for condemning rights of way for railroads. It is there expressly enacted that "upon the coming in of the report exceptions may be filed, and upon the determination of the same either party may appeal." This Court has uniformly held that in proceedings under that statute no appeal can be taken until the coming in of the report. TelegraphCo. v. R. R., 83 N.C. 420; R. R. v. Newton, supra.
The defendant contends that the cases decided by the Court in regard to the right of the defendant to have a jury trial should not be followed, because the present Constitution expressly secures to him the right to trial by jury. We do not perceive any difference between the language of section 14 of the Declaration of Rights of 1776 and section 19 of our present Constitution. They are in identically the same words. It is true that the Court has held that controversies at law include all civil actions, "suits in equity" having been abolished by the Constitution. This principle has never been understood to extend (454) to proceedings "not according to the course of the common law" or to summary statutory proceedings.
Guided by the principles and procedure which we think correspond to the provisions of the statute and the decisions of this Court, we proceed to consider the defendant's answer to ascertain whether any issues of fact are raised which must be determined by a jury at a regular term of the court. Referring to matters set up in the answer in Durden v. Simmons, supra, of a character similar to much of the answer in this case, Smith, C. J., says: "We give all the effect to which the answer is fairly entitled in construing it as a denial of the relations between *Page 330 
the lands and the necessity and propriety of burdening the one for the other, and this under the statute is the appropriate function of the commissioners from the words of the act." We gather from this language that the allegations regarding the necessity for the ditches to drain the plaintiff's land were proper to be submitted to the commissioners when appointed, and was the basis for issues to be tried by a jury.
In Winslow v. Winslow, 95 N.C. 24, no objection was made to the issues submitted. Merrimon, J., said: "No question is made as to the regularity and propriety of submitting to the jury the issues set out in the record, and we advert to them for the purpose of saying that it may be questionable whether it is proper to submit such as they are." In R. R. v. Ely, 101 N.C. 8, no objection was made to the issues submitted. In R. R. v.Parker, 105 N.C. 246, the appeal was taken after the coming in of the report. The Court held that the party filing exceptions was not entitled to a jury trial. We are therefore of the opinion that the questions involved in the first, second, fifth, sixth and seventh issues submitted by his Honor should be passed (455) upon by the commissioners when appointed, and do not present issues of fact to be tried by the jury.
The third and fourth issues are directed to an alleged estoppel growing out of an agreement made by one Levin Lane, a former owner of the defendant's land, and one Berry, formerly owning the plaintiff's land; also a plea of res judicata based upon suits heard and determined between the parties. We are not quite sure that we correctly interpret the language of the answer in respect to these matters. If, as we understand, it is sought to estop the plaintiff by the agreement referred to, the terms and extent of the agreement should have been fully set forth. If it was a personal license to drain through the defendant's land it was not enforceable, and therefore could not work an estoppel to prosecute this petition. In regard to the suggestion that the matter set up in the petition is res judicata, we cannot see how, in the uncertainty of the reference to the alleged suits, an issue can be drawn. No reference is made to any particular suit. An estoppel which "shutteth a man's mouth to speak the truth" should be pleaded with certainty and particularity. 8 Enc., Pl. Pr., 11. The court should be able to see from the pleadings what facts are relied upon to work the estoppel. The defendant's counsel in their well-considered brief make no reference to this part of their answer. If the defendant desires to set up the estoppel as a plea in bar, it is within the power of the clerk, if he shall think it in furtherance of justice, to permit him to do so by way of amendment to his answer. *Page 331 
We do not find anything in the decisions of this Court, in the several cases which have come before us between the parties, which would estop the plaintiff from prosecuting his petition. Douglas.J., in Porter v. Armstrong, 129 N.C. 101, says: "While the question is not now before us, we see no reason, as at present advised, why the petitioner cannot proceed under chapter 30 of the Code." This petition is based (456) upon the theory that the plaintiff has no easement or other right to drain through the defendant's land. If this is not true he cannot maintain his petition.
We conclude upon the record that no plea in bar has been sufficiently pleaded; that the matters set up in the answer other than those relied upon for the plea are properly triable by the commissioners to be appointed by the clerk. We think the order of the court appealable under section 548 of the Code. It would be an idle and expensive thing to try this cause before a jury only to have the same questions submitted to the commissioners after verdict. It is one of the anomalies in the practical working of our laws that a statute passed more than a century since for the promotion of agriculture, the opening of swamp lands, and increasing the capacity of the earth to bring forth bread for the people, should be a subject of expensive litigation and almost hopeless delay. Without expressing any opinion in regard to the merits of this long-standing controversy, we are struck with the fact, as appears from the records of this Court, that for nearly thirty years the owners of these lands have been in litigation in regard to their drainage. We cannot but indulge the hope that when three disinterested, intelligent freeholders shall view the premises and find the facts both parties may find it consistent with their sense of justice and their own interests to abide the judgment.
Error.
DOUGLAS, J., dissents.
Cited: R. R. v. R. R., 148 N.C. 64; Staton v. Staton, ib., 491;Abernathy v. R. R., 150 N.C. 103. *Page 332 
(457)