WALTER PAINTER, PETER EGGIMANN, SHELTON V. BRIDGERS, AND TOMMY OAKLEY, AS CITIZENS AND TAXPAYERS OF WAKE COUNTY, ON BEHALF OF THEMSELVES AND ALL OTHER CITIZENS AND TAXPAYERS OF WAKE COUNTY; AND WAKE COUNTY BOARD OF COMMISSIONERS, A BODY CORPORATE, PLAINTIFFS v. WAKE COUNTY BOARD OF EDUCATION, A BODY CORPORATE, AND VANCE RAYBON, JR., AND SALLIE K. RAYBON, DEFENDANTS v. KENNETH R. BALLENGER, CHARLES TERRY, LAURA TERRY, SYDNEY C. EDDINS, AND DONALD HORTON, INTERVENORS

No. 114

(Filed 27 August 1975)

1. Judgments § 37— matters concluded

A judgment on the merits is conclusive not only as to matters actually litigated and determined but also as to all matters properly within the scope of the pleadings which could and should have been brought forward.

2. Judgments § 37— res judicata — matter which should have been raised in earlier suit

Plaintiffs' claim against a county board of education regarding selection of a school site is barred by an earlier judgment involving essentially the same plaintiffs and defendants where the complaint in the earlier action sought to have the site selection declared void on grounds that plaintiffs were denied the opportunity to be heard and that the board improperly delegated its authority, and plaintiffs seek the identical relief in the present action but assert as an additional ground for recovery that the board abused its discretion in selecting the site, since the matters raised in the present suit concerning the selection of the site could and should have been raised in the earlier action.

3. Schools § 6— exchange of property by school board — constitutionality of statute

The statute permitting a school board to exchange property owned by it in full or partial payment for property to be acquired for public school purposes, G.S. 115-126(d), is not unconstitutional in failing to provide standards or guidelines since case law and other statutes, when read *in pari materia*, provide well-defined guidelines for the requirement that the school board not abuse its discretion in acquiring property for public school purposes, and the statute does not give the board of education any additional power to acquire land for school purposes but only provides an alternate method of payment for land which the board in its discretion decides to purchase.

4. Public Officers § 8; Schools § 6— exchange of property — presumption of good faith

It is presumed that a county board of education, in proposing an exchange of property, was acting in good faith and in accord with the spirit and purpose of G.S. 115-126(d), and the burden is upon a party asserting otherwise to overcome this presumption.

5. **Schools § 6— exchange of property — discrepancy in valuations — abuse of discretion**

A discrepancy in the valuations of properties proposed to be exchanged by a board of education bears only on the question of abuse of discretion and is only one of the factors to be considered in determining whether the board has abused its discretion.

6. **Jury § 1; Schools § 6— exchange of school property — valuation — jury trial — duty of court to make findings**

In an action to restrain a county board of education from exchanging property it owns for other property, plaintiffs are not entitled to a jury trial on the question of valuation of the two tracts involved, but the trial court should find the facts and determine as a matter of law whether under all the facts involved, including relative values, defendant board abused its discretion in proposing the exchange.

7. **Schools § 6— school boards — exchange of property — approval of county commissioners**

A county board of education was not required by G.S. 115-78(c) (1) to obtain the approval of the board of county commissioners for an exchange of property pursuant to G.S. 115-126(d).

ON appeal pursuant to G.S. 7A-31 from judgment by *Bailey, J.,* at the 11 November 1974 Session of WAKE Superior Court.

This action was initiated by the filing of a complaint on 29 August 1974 which alleged, in summary, that:

I. The plaintiffs are citizens and taxpayers of Wake County and represent a class of people too numerous to enumerate who are also citizens and taxpayers of Wake County and are similarly situated in all matters complained of herein, and the persons named as plaintiffs herein will fairly insure the adequate representation of all the persons in the said class.

II. The defendant Wake County Board of Education is a body corporate and has the power, pursuant to G.S. 115-27, to sue and be sued in its corporate capacity.

III. On or about 24 October 1973, the defendant voted to consolidate Knightdale, Wendell and Zebulon into a comprehensive high school to be located in eastern Wake County. On or about the same date, defendant also announced that the comprehensive high school would be located in the vicinity of Lizard Lick, just west of Zebulon.

Painter v. Board of Education

IV. Thereafter defendant selected a site on the western edge of Zebulon commonly referred to in the community as "The Yancey Farm."

V. Thereafter the Wake County Board of Commissioners failed to approve funds for the purchase of the Yancey farm site, and still refuses to approve such funds.

VI. Despite the refusal of the Board of Commissioners to approve funds for the purchase of the Yancey farm site, defendant now proposes, pursuant to G.S. 115-126(d), to exchange 40.462 acres which it now owns in eastern Wake County for 40.46 acres of the Yancey farm site.

VII. On 21 August 1974, defendant filed notice with the Wake County Clerk of Superior Court of its intention to effect such exchange.

VIII. Plaintiffs believe that G.S. 115-126(d) is unconstitutional and void due to its vagueness and lack of any standard by which the Board of Education is to pattern its action in acquiring real property, and the proposed exchange is therefore also null and void in that it is an action to be taken pursuant to an unconstitutional statute.

IX. Plaintiffs believe that even if G.S. 115-126(d) is constitutional, defendant's action in attempting to exchange its parcel of land for land from the Yancey farm site constitutes a manifest abuse of discretion because plaintiffs are informed and believe that the land owned by defendant is worth approximately twice as much as the Yancey farm site.

X. Plaintiffs further believe that the defendant acted arbitrarily and in abuse of its discretion in that it knowingly used inaccurate population projection figures in reaching its determination as to the location of the school, and that as a result the great majority of the students will be required to ride a great distance to school.

XI. Plaintiffs believe they may suffer immediate irreparable injury for which there is no adequate remedy at law because the land now owned by the defendant could be transferred to an innocent purchaser for value.

For the above reasons, plaintiffs prayed the court, in summary, that:

1. G.S. 115-126 (d) be declared unconstitutional as being an unlawful delegation of authority.

2. The selection of the Yancey farm site be declared null and void as having been made arbitrarily, capriciously, and in bad faith, amounting to a manifest abuse of discretion.

3. The consummation of the proposed exchange be permanently restrained and enjoined.

4. The court issue a preliminary injunction restraining and enjoining defendants from the consummation of the proposed exchange during the pendency of this action.

5. The court issue a temporary restraining order, and accept this verified complaint as an affidavit and motion for such order.

6. A jury trial be had on all issues.

7. The court grant such other and further relief as it deems just and proper.

On 29 August 1974, Judge McLelland granted plaintiffs' motion for a temporary restraining order and ordered the parties to appear on 5 September 1974 and show cause why the order should not be continued until final hearing.

After hearing oral testimony of the plaintiffs and reviewing affidavits and exhibits presented by both parties, Judge McLelland, by order dated 6 September 1974, granted plaintiffs' motion for a preliminary injunction pending final determination of the case on its merits.

On 23 September 1974, intervenors filed, pursuant to Rule 24 of the North Carolina Rules of Civil Procedure, a motion supported by affidavits for leave to intervene. Intervenors alleged that plaintiffs do not adequately represent the purported class and that there is no community of interest between plaintiffs and members of the class that plaintiffs purport to represent.

On 7 October 1974, plaintiffs filed another complaint similar in many respects to the first, alleging that defendant had, on 1 October 1974, filed notice of its intention to exchange its

property for a different part of the Yancey farm site, and alleging that defendant was by that action seeking to circumvent the 6 September order granting plaintiffs a preliminary injunction. This complaint alleged the same grounds for relief as the earlier complaint, but in addition alleged that the proposed exchange would violate G.S. 115-78(c)(1), which provides that no contract for the purchase of any site shall be executed without the approval of the Board of County Commissioners.

Also on 7 October 1974, Judge McLelland granted plaintiffs' motion contained in their second complaint that they be granted a temporary restraining order, and further ordered that the parties appear on 10 October 1974 and show cause why the temporary restraining order should not be continued until final hearing.

On 17 October 1974, Judge McLelland entered an order, effective 11 October 1974, granting plaintiffs a preliminary injunction on their second complaint and consolidating the cases for the purpose of trial under Rule 42(a) of the North Carolina Rules of Civil Procedure. On the same date, Judge Bailey entered an order allowing the motion of intervenors to intervene.

On 28 October 1974, defendant filed an answer to plaintiffs' first complaint which alleged, in summary:

I. Before the commencement of this action, on 30 November 1973, plaintiffs Peter Eggimann and Shelton Bridgers filed a class action against defendant in the Superior Court of Wake County seeking to have the selection of the Yancey farm site declared unlawful, unconstitutional and void. One of the defenses set forth in defendant's answer was that the selection of said site constituted a reasonable exercise of discretion on the part of defendant. Defendant's motion for summary judgment was granted in Wake County Superior Court on 28 January 1974, and the Court of Appeals affirmed in an opinion filed 17 July 1974, and reported at 22 N.C. App. 459. The North Carolina Supreme Court denied plaintiffs' petition for *certiorari*. Since the parties and issues in this action and in the former action are the same, trial and judgment in the former action was finally dispositive of the causes of action and issues relating to the selection and value of the Yancey farm site presented in this suit.

II. G.S. 115-126 (d) is constitutional, but in the event said statute is unconstitutional, defendant nonetheless has authority to consummate the exchange of property sought to be enjoined pursuant to the laws of North Carolina.

III. G.S. 115-78 (c) (1) does not apply to an exchange of real property pursuant to the provisions of G.S. 115-126 (d).

IV. Plaintiffs have failed to utilize the administrative remedy provided them in G.S. 115-87.

V. Plaintiffs are guilty of unreasonable delay and laches in bringing this suit.

VI. The selection of the Yancey farm site as the site for a comprehensive high school was made after years of study, and the selection of that site constitutes a reasonable exercise of the discretion of defendant.

VII. The voters of Wake County approved a bond referendum in November 1973 which would finance the construction of a high school upon the Yancey farm site. The effect of plaintiffs' suit therefore is to challenge a political decision made by defendant and the voters of Wake County, which decision may not be the basis for a justiciable controversy.

On 1 November 1974, defendant filed answer to plaintiffs' second complaint similar in most respects to its first answer. Additionally, defendant alleged that plaintiff Wake County Board of Commissioners, under G.S. 153A-11 and G.S. 153A-12, lacks statutory authority to maintain the present action.

Also on 1 November 1974, defendant moved for summary judgment in both cases. On 13 November 1974, Judge Bailey granted defendant's motion as follows:

"This cause coming on to be heard on the 12th day of November, 1974, before the Honorable James H. Pou Bailey, Resident Judge of the Superior Court of Wake County, North Carolina, upon motions of the defendant Wake County Board of Education for summary judgment heretofore filed in actions 74-CVS-8272 and 74-CVS-9836; and said motions being consolidated for hearing and judgment, and defendant having filed affidavits and plaintiffs having filed counter-affidavits, and all of the parties to this action hav-

Painter v. Board of Education

ing been represented by counsel who presented written and oral argument to the Court; and this cause having been heard;

"And it appearing to the Court that the Board of Education is given the power under the law to select school sites, and that the exercise of that power in a non-arbitrary, non-capricious manner without a manifest abuse of discretion is not reviewable by the Courts; that N.C.G.S. 115-126 (d) permits a Board of Education to exchange property in full or partial payment for property to be acquired for public school purposes and that said statute is not unconstitutional; that plaintiffs have presented no facts tending to show that defendant contrived to have population figures projected in order to justify a site selection; that there exists a statutory presumption that the action of the Wake County Board of Education was correct and that in this cause said Board of Education is entitled to said presumption of regularity and to a presumption of constitutionality; that all of the matters raised in this suit concerning the selection of the school site could have been raised in a prior suit between substantially the same parties as the instant suit, said prior suit being designated Docket No. 73-CVS-11194, and the Wake County Superior Court having rendered final judgment therein for defendant; that the Wake County Board of Commissioners is not a body corporate and may sue only in those instances expressly authorized by statute and then only in the name of Wake County and that said body is improperly joined in this action; and that in the instant case the wisdom of the Wake County Board of Education in selecting school sites is not before the Court;

"AND THE COURT FINDING that the records and files in this matter, including the pleadings, affidavits, evidence, exhibits, and testimony, and the record in the case of EGGIMANN, ET AL. v. BOARD OF EDUCATION, 73 CVS 11194, show that there is no genuine issue as to any material fact and that the defendant, Wake County Board of Education, is entitled to a judgment as a matter of law.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED BY THE COURT:

"1. That the plaintiff, Wake County Board of Commissioners, is removed as a party plaintiff.

"2. That N.C.G.S. 115-126 (d) is declared valid and constitutional.

"3. That all restraining orders and injunctions entered in the actions are hereby dissolved.

"4. That the plaintiffs' actions are hereby dismissed with prejudice.

"5. That the cost of the action be taxed against the plaintiffs."

Also on 13 November 1974, Judge Bailey entered the following order reinstating the preliminary injunction:

"Plaintiffs having given notice of appeal in this action, the Court, in the exercise of its discretion pursuant to the provisions of N.C.G.S. 1-500, orders that the preliminary injunctions rendered in 74 CVS 8272 and 74 CVS 9836 shall remain in full force and effect until said appeal can be heard; and it is further ordered that as a condition precedent to the issuance of this order, the Clerk of this Court, shall, on or before the 18th day of November, 1974, take from the plaintiffs other than the Wake County Board of Commissioners a written undertaking with sufficient sureties to be justified before and approved by the Clerk in the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), to the effect that the plaintiffs will pay the party enjoined against all loss, not exceeding FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), which it may suffer on account of continuing such preliminary injunction as aforesaid, in the event that the judgment of this Court is affirmed on appeal. In the event said undertaking is not made on or before the 18 day of November, 1974, then this order shall be null and void."

Plaintiffs appealed and we allowed plaintiffs' petition for appellate review in this Court prior to determination in the Court of Appeals.

*Kirk & Ewell by Clarence M. Kirk for plaintiff appellants.*

*Davis, Davis & Debnam by F. Leary Davis, Jr. for defendant appellee.*

*Hatch, Little, Bunn, Jones, Few & Berry by William T. Hatch and Harold W. Berry, Jr. for defendant intervenors.*

MOORE, Justice.

We first consider whether the final judgment entered in *Eggimann v. Board of Education,* 22 N.C. App. 459, 206 S.E. 2d 754 (1974), bars plaintiffs as to issues regarding defendant's selection of the Yancey farm site.

[1] A judgment on the merits is conclusive not only as to matters actually litigated and determined but also as to all matters properly within the scope of the pleadings which could and should have been brought forward. *In re Trucking Co.,* 285 N.C. 552, 206 S.E. 2d 172 (1974) ; *Wilson v. Hoyle,* 263 N.C. 194, 139 S.E. 2d 206 (1964) ; *Hayes v. Ricard,* 251 N.C. 485, 112 S.E. 2d 123 (1960) ; *Worthington v. Wooten,* 242 N.C. 88, 86 S.E. 2d 767 (1955).

As we said in *Gibbs v. Higgins,* 215 N.C. 201, 204-05, 1 S.E. 2d 554, 557 (1939), " ' . . . The plea of *res ajudicata* applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject in litigation and which the parties *exercising reasonable diligence,* might have brought forward at the time and determined respecting it.' [Citations omitted.]" (Emphasis added.) *Accord, In re Trucking Co., supra; Garner v. Garner,* 268 N.C. 664, 151 S.E. 2d 553 (1966) ; *Walker v. Story,* 256 N.C. 453, 124 S.E. 2d 113 (1962) ; *Hayes v. Ricard, supra.* In *Garner, supra,* at 666, 151 S.E. 2d at 554, quoting from *Moore v. Harkins,* 179 N.C. 167, 101 S.E. 564 (1919), we stated: " ' . . . This extent of the rule can impose no hardship. It requires no more than a reasonable degree of vigilance and attention; a different course might be dangerous and often oppressive. . . . ' "

[2] Applying this rule to the present case, we think plaintiffs' claim regarding *selection* of the Yancey farm site is barred by the earlier judgment involving essentially the same plaintiffs and defendants. The complaint in the earlier action prayed the court that selection of the Yancey farm site be declared void, alleging that the Board unlawfully denied plaintiffs opportunity to be heard and that the Board improperly delegated its authority in violation of law. Plaintiffs pray the court for identical relief in the present action, asserting as an additional ground for recovery that the Board abused its discretion in selecting the Yancey farm site. We think plaintiffs, in the exercise of a rea-

sonable degree of diligence, should have included this allegation in its earlier action.

The record in the earlier action discloses that defendant Board alleged in its answer that the selection of the Yancey farm site was made in the reasonable exercise of its discretion. Several affidavits relating in some detail the care taken in selecting the Yancey farm site were introduced by defendant in the prior action. The trial judge in allowing summary judgment for defendant in that action ordered: "That the action of the Wake County Board of Education in selecting the G. W. Yancey homeplace as the site for the establishment of a comprehensive high school is valid."

Additionally, the record contains the following statement made by one of plaintiffs' attorneys at a meeting of plaintiffs regarding the issue of site selection: "Ultimate relief by injunction would be fruitless in my opinion because the school board has so much discretionary authority to act and the facts and figures to be put into a lawsuit could be refuted by them to their satisfaction and within their discretionary authority." It thus appears that the failure to allege and offer proof in the earlier action that the Board abused its discretion in the selection of the Yancey site was the result of a conscious decision by plaintiffs. Plaintiffs must now abide the consequences of that decision. *See Hayes v. Ricard, supra,* at 494-95, 112 S.E. 2d at 130, and cases cited. We hold that the trial court did not err in holding that the matters raised in the present suit concerning the selection of the Yancey site should have been raised in the earlier action.

In view of this holding, only three questions which were not and could not have been reasonably raised in the prior action remain to be decided. First, is G.S. 115-126 (d) constitutional? Second, did defendant abuse its discretion in offering to exchange its tract (Wakefield tract) for the Yancey tract? Third, is the Board of Education required to have the approval of the Board of County Commissioners for the exchange under the provisions of G.S. 115-78 (c) (1) ?

G.S. 115-126 (d) provides:

"In the *acquisition* by it of any property for *public school purposes* any county board of education, or any board of education for any city administrative unit, may exchange therefor, as full or partial payment therefor, any property

owned or held by it, without compliance with the provisions of this section: Provided, that for at least ten days before any exchange of real property shall be consummated, the terms of such proposed exchange shall be filed in the office of the superintendent of schools of such administrative unit and in the office of the clerk of the superior court in the county in which such property is located, and a notice thereof published one or more times in a newspaper having a general circulation in the administrative unit at least ten days before the consummation of said exchange." (Emphasis added.)

[3] Plaintiffs contend that under this statute a school board is given absolute and unbridled discretion in exchanging public land for private land in that no standards or guidelines are provided, and for this reason, under Article II, Section 1 of the North Carolina Constitution, this statute is unconstitutional.

The General Assembly has clearly stated the policy of the State with reference to the power of a county board of education. G.S. 115-27 provides in part:

" . . . The several boards of education, both county and city, shall hold all school property and be capable of purchasing and holding real and personal property, of building and repairing schoolhouses, of selling and *transferring the same for school purposes,* and of prosecuting and defending suits for or against the corporation." (Emphasis added.)

G.S. 115-125 provides in part:

"County and city boards of education may *acquire* suitable sites for *schoolhouses or other school facilities* either within or without the administrative unit. . . . " (Emphasis added.)

G.S. 115-35 (b) provides:

"General Powers and General Control.—All powers and duties conferred and imposed by law *respecting public schools,* which are not expressly conferred and imposed upon some other official, are conferred and imposed upon county and city boards of education. Said boards of education shall have general control and supervision of all matters *pertaining to the public schools* in their respective administrative units and they shall enforce the school law in their respective units." (Emphasis added.)

And, regarding the Board's power relating to school consolidation *per se,* the General Assembly has said in G.S. 115-76(1):

"... [T]he board of education of the county ... and the State Board of Education shall cause a thorough study ... to be made, having in mind primarily the welfare of the students to be affected by a proposed consolidation and including in such study, among other factors, geographic conditions, anticipated increase or decrease in school enrollment, the inconvenience or hardship that might result to the pupils to be affected by such consolidation, the cost of providing additional school facilities in the event of such consolidation, and the importance of such school to the people of the community in which the same is located and their interest in and support of same. ..."

In construing these statutes, our Court has consistently held that the Board of Education determines whether new school buildings are needed and, if so, where they shall be located. Such decisions are vested in the sound discretion of the Board. The Board's discretion with reference thereto cannot be restrained by the courts absent a manifest abuse of discretion or a disregard of law. *Lutz v. Board of Education,* 282 N.C. 208, 192 S.E. 2d 463 (1972); *Dilday v. Board of Education,* 267 N.C. 438, 148 S.E. 2d 513 (1966); *Feezor v. Siceloff,* 232 N.C. 563, 61 S.E. 2d 714 (1950); *Board of Education v. Lewis,* 231 N.C. 661, 58 S.E. 2d 725 (1950); *Waldrop v. Hodges,* 230 N.C. 370, 53 S.E. 2d 263 (1949); *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484 (1949); *Board of Education v. Pegram,* 197 N.C. 33, 147 S.E. 622 (1929); *Board of Education v. Forrest,* 190 N.C. 753, 130 S.E. 621 (1925); *School Commissioners v. Aldermen,* 158 N.C. 191, 73 S.E. 905 (1912); *Venable v. School Committee,* 149 N.C. 120, 62 S.E. 902 (1908). Thus, abundant case law and the above statutes, when read *in pari materia,* give well-defined contours to the requirement that the school board not abuse its discretion in acquiring property for public school purposes. *See In re Willis,* 288 N.C. 1, 215 S.E. 2d 771 (1975).

In *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953), which plaintiffs contend is supportive of their position, there was no such well-developed case law providing guidelines for the Turnpike Authority in the exercise of its duties "in the public interest." Further, the legislative power delegated in *Coastal Highway* was not the type usually granted local governments in aid of the functions of state government.

*See Turnpike Authority v. Pine Island,* 265 N.C. 109, 143 S.E. 2d 319 (1965) ; *Provision Co. v. Daves,* 190 N.C. 7, 128 S.E. 593 (1925).

G.S. 115-126 (d) does not give the Board of Education any additional power to acquire land for school purposes. This power is given by G.S. 115-27, *supra;* G.S. 115-125, *supra;* and G.S. 115-35 (b), *supra.* G.S. 115-126 (d) only provides an alternate method of payment for land which the Board in its discretion decides to purchase. Before any exchange of real property can be consummated under G.S. 115-126 (d), the exchange must be for school purposes, and the terms of the exchange must be filed in the office of the local superintendent of schools and in the office of the clerk of the superior court in the county where the property is located. In addition, the public is notified of the proposed exchange by publication in a newspaper of general circulation in the territory served by the Board at least ten days before the consummation of the exchange, and any qualified taxpayer has the right as was done here to challenge the validity of the transfer.

In considering the constitutionality of a statute, it is well established that the courts will indulge every presumption in favor of its constitutionality. *Vinson v. Chappell,* 275 N.C. 234, 166 S.E. 2d 686 (1969) ; *Sykes v. Clayton, Comr. of Revenue,* 274 N.C. 398, 163 S.E. 2d 775 (1968). A statute will not be declared unconstitutional unless it is clearly so, and all reasonable doubt will be resolved in favor of its validity. *State v. Anderson,* 275 N.C. 168, 166 S.E. 2d 49 (1969) ; *Glenn v. Board of Education,* 210 N.C. 525, 187 S.E. 781 (1936). As we said in *State v. Anderson, supra,* at 171, 166 S.E. 2d at 50, "In passing upon the constitutional question involved, this Court must assume that acts of the General Assembly are constitutional and within its legislative power until and unless the contrary clearly appears. *State v. Brockwell* [209 N.C. 209, 183 S.E. 378 (1936) ]," and a doctrine which is firmly established in our law is that all power which is not limited by the Constitution inheres in the people. An act of our General Assembly is legal when the Constitution contains no prohibition against it. North Carolina Constitution, Article I, Section 2; *State v. Anderson, supra; Lassiter v. Board of Elections,* 248 N.C. 102, 102 S.E. 2d 853 (1958) ; *State v. Warren,* 211 N.C. 75, 189 S.E. 108 (1937). We find nothing in the Constitution which prohibits the Board of

Education from exchanging land which it owns for other land for school purposes. This assignment is overruled.

Plaintiffs next contend defendant abused its discretion in offering to exchange the Wakefield tract for the Yancey tract since the Wakefield tract is worth two and one-half times as much as the Yancey tract.

In *Teer v. Jordan*, 232 N.C. 48, 51, 59 S.E. 2d 359, 362 (1950), we said:

> " . . . While the activities of governmental agencies engaged in public service imposed by law ought not to be stayed or hindered merely at the suit of an individual who does not agree with the policy or discretion of those charged with responsibility, the right of a citizen and taxpayer to maintain an action in the courts to restrain the unlawful use of public funds to his injury cannot be denied. *S. v. Scott*, 182 N.C. 865, 109 S.E. 789; *Hinton v. Lacy*, 193 N.C. 496, 137 S.E. 669; *Freeman v. Commissioners*, 217 N.C. 209 (212), [7] S.E. 2d 354; *Shaw v. Liggett & Myers Tobacco Co.*, 226 N.C. 477, 38 S.E. 2d 313. . . . "

*Accord, Styers v. Phillips*, 277 N.C. 460, 178 S.E. 2d 583 (1971).

Absent evidence to the contrary, it will always be presumed:

> " . . . ' "[T]hat public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. . . . Every reasonable intendment will be made in support of the presumption." ' *Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E. 2d 681, 686, 687. '[T]he burden is upon the party asserting the contrary to overcome the presumption by competent and substantial evidence.' 6 N.C. Index 2d *Public Officers* § 8 (1968)." Id. at 473, 178 S.E. 2d at 591.

[4] In this case it is presumed the defendant, in proposing the exchange of property, was acting in good faith and in accord with the spirit and purpose of G.S. 115-126(d). The burden is upon plaintiffs to overcome this presumption.

Plaintiffs alleged and at the hearing offered proof tending to show that the land which the defendant now owns is worth two and one-half times as much as the tract for which defendant proposes to exchange. Defendant denied this allegation and offered evidence tending to show that the tract which it proposes

to acquire is more valuable than the one it now owns. Plaintiffs therefore contend that they are entitled to a jury trial on the issue of value.

[5]   G.S. 115-126 (d) does not limit an exchange to property of equal value. If a discrepancy in valuation does exist it bears only on the question of abuse of discretion, and any such discrepancy is only one of the factors to be considered in determining whether the Board has abused its discretion.

In *Barbour v. Carteret County*, 255 N.C. 177, 120 S.E. 2d 448 (1961), plaintiffs sought to enjoin the expenditure of county funds for the purchase of a tract of land on which to construct a public building, alleging that the commissioners had agreed to pay the sum of $75,000 for the land in question, which sum was more than twice the reasonable value of the property involved. In reversing a judgment which sustained a demurrer to the complaint, Justice Rodman, speaking for the Court, said:

> "County commissioners, in approving the design, the method of construction, the site for a public building, and the amount to be paid for the site, are performing duties inherent to their offices, expressly conferred by the Legislature. G.S. 153-9 (8), (9). Courts have no right to pass on the wisdom with which they act. Courts cannot substitute their judgment for that of the county officials honestly and fairly exercised. For a court to enjoin the proposed expenditure, there must be allegation and proof that the county officials acted in wanton disregard of public good. *Burton v. Reidsville*, 243 N.C. 405, 90 S.E. 2d 700; *Kistler v. Board of Education*, 233 N.C. 400, 64 S.E. 2d 403; *Waldrop v. Hodges*, [230 N.C. 370, 53 S.E. 2d 263]; *Jackson v. Commissioners*, 171 N.C. 379, 88 S.E. 521; *Commissioners v. Commissioners*, 165 N.C. 632, 81 S.E. 1001; *Newton v. School Comm.*, 158 N.C. 186, 73 S.E. 886; *Jeffress v. Greenville*, 154 N.C. 490, 70 S.E. 919."

In *McInnish v. Board of Education*, 187 N.C. 494, 122 S.E. 182 (1924), plaintiffs sought to enjoin the erection of a school building, alleging that the site selected would be dangerous to children attending school at that location. At the hearing, plaintiffs moved for a jury trial and tendered issues relating to the alleged dangerous agencies and to the question whether defend-

ant had abused its discretion. The trial judge denied plaintiffs' motion and this Court affirmed, stating:

> "The plaintiffs insist that they were entitled to a trial by jury as to the eligibility of the site selected and as to the dangers to which the children would be exposed while attending the school.
>
> " 'In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable.' Constitution, Art. I, sec. 19.
>
> "In *Groves v. Ware,* 182 N.C., 553, it was held that the right to a trial by jury as provided in this section applies only to cases in which the prerogative existed at common law or was procured by statute at the time the Constitution was adopted, and not to those in which the right and the remedy are thereafter created by statute.
>
> "The section cannot be invoked to deprive a public official of the discretion with which he is clothed by legislative enactment. *Comrs. v. George,* 182 N.C., 414; *Corporation Commission v. R. R.,* 170 N.C., 560; *Porter v. Armstrong,* 134 N.C., 447; *Ledbetter v. Pinner,* 120 N.C., 458, 43 L. R. A., 56; 16 R. C. L., 224."

See *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E. 2d 795 (1961); *Kaperonis v. Highway Commission,* 260 N.C. 587, 133 S.E. 2d 464 (1963).

In *Burton v. Reidsville,* 243 N.C. 405, 90 S.E. 2d 700 (1956), plaintiffs sought to enjoin defendant from destroying certain apartment buildings belonging to the city and situated on land leased by it. The complaint alleged that the apartments were of solid construction, were not injurious to life, health, or morals, did not constitute a slum condition or a fire hazard, violated no zoning regulations, and that the city council had been offered substantial consideration for the buildings but had refused to negotiate or consider the sale or any disposition of the property other than its destruction. Chief Justice Barnhill, speaking for the Court, said:

> "The disposition of the apartment houses described in the complaint, situated as they are on the land of others who demand one-half of the rents, rests within the sound

discretion of the defendant members of the Council of the City of Reidsville. [Citations omitted.] . . . .

"The acts of administrative or executive officers are not to be set at naught by recourse to the courts. Nor are courts charged with the duty or vested with the authority to supervise administrative and executive agencies of our government. However, a court of competent jurisdiction may determine in a proper proceeding whether a public official has acted capriciously or arbitrarily or in bad faith or in disregard of the law. *Pue v. Hood, Comr. of Banks* [222 N.C. 310, 22 S.E. 2d 896]. And it may compel action in good faith in accord with the law. But when the jurisdiction of a court is properly invoked to review the action of a public official to determine whether he, in choosing one of two or more courses of action, abused his discretion, the court may not direct any particular course of action. It only decides whether the action of the public official was contrary to law or so patently in bad faith as to evidence arbitrary abuse of his right of choice. If the officer acted within the law and in good faith in the exercise of his best judgment, the court must decline to interfere even though it is convinced the official chose the wrong course of action. . . . [T]he courts were not created or vested with authority to act as supervisory agencies to control and direct the action of executive and administrative agencies or officials. So long as officers act in good faith and in accord with the law, the courts are powerless to act—and rightly so.

\* \* \*

"It is a question of fact for the court below to decide. After hearing the evidence, it should find at least the ultimate facts and render its judgment on the facts found."

*See* 2 McIntosh, N. C. Practice and Procedure § 1433 (2d Ed.).

[6] Plaintiffs are not entitled to a jury trial on the question of valuation of the two tracts involved. The trial court should find the facts and render its judgment on the facts found as to whether the Board abused its discretion in proposing the exchange.

**[7]**   Plaintiffs finally contend that defendant was required to have the approval of the county commissioners for this exchange under the provisions of G.S. 115-78(c)(1) which provides:

"(c) *The capital outlay fund* shall provide for the *purchase of sites,* the erection of all school buildings properly belonging to school plants, improvement of new school grounds, alteration and addition to buildings, purchase of furniture, equipment, trucks, automobiles, school buses, and other necessary items for the better operation and administration of the public schools in the following divisions:

"(1)   New Buildings and Grounds.—*Estimated total cost of new buildings including grounds,* heating, plumbing and electrical equipment, furniture and instructional apparatus, architect and engineering fees, and other costs; provided, the estimated cost of the site shall be included in the total estimated cost of the building but not as a separate item; *provided further, that no contract for the purchase of the site shall be executed nor any funds expended therefor without the approval of the board of county commissioners as to the amount to be spent for the site; and in case of a disagreement* between a board of education and a board of county commissioners *as to the amount to be spent for the site,* the procedure provided in G.S. 115-87 shall, insofar as the same may be applicable, be used to settle the disagreement." (Emphasis added.)

A reading of the above statute and G.S. 115-126(d) reveals that they are not in conflict but rather are speaking to different situations. G.S. 115-126(d) deals with the acquisition of school sites through transfers of real property owned by the Board for property needed by it. G.S. 115-78 deals with budgets and expenditure of money. It refers only to expenditure of funds when the county commissioners have approved the amount to be spent for a site and further provides the administrative machinery, under G.S. 115-87, in the event of a dispute. A reading of the proviso of G.S. 115-78(c)(1), including the statement that the procedure of G.S. 115-87 is to be utilized to settle disagreements, indicates a clear legislative intent to limit the proviso to situations in which sites are to be *purchased* by boards of education

with *money* furnished by county commissioners for the current budget year.

In the present case the Commissioners of Wake County are not required to levy taxes to enable defendant to acquire the Yancey site. It can be acquired by an exchange. G.S. 115-126(d) states that in acquiring a school site a board of education may exchange therefor any property owned or held by it. It is an undisputed fact that the Wakefield tract was purchased by defendant in 1969. The fact that defendant owned the Wakefield tract indicates either that it was acquired with the proceeds of a gift or that some taxing authority decided that its acquisition was a necessary expense. G.S. 115-78(c)(1) provides no authority for interference with the sound exercise of defendant's discretion in *exchanging* land.

The Wake County Commissioners withdrew their appeal from Judge Bailey's order removing them as parties plaintiff, and are no longer parties to this action. Hence, they are not now contesting this exchange.

For the reasons stated, the case is remanded to the Superior Court of Wake County for a hearing *de novo* for the court to determine as a matter of law whether under all the facts involved, including relative values, defendant Board abused its discretion in proposing this exchange. The judgment of Judge Bailey is in all other respects affirmed.

Modified and affirmed.