W. B. HARRILL v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT
SYSTEM, A CORPORATION
AND
W. E. BIRD v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT
SYSTEM, A CORPORATION.

(Filed 20 September, 1967.)

**1. Retirement Systems § 1;   Constitutional Law § 19—**

Allowances to which a member of the Teachers' and State Employees'
Retirement System is entitled upon retirement constitute compensation
for public services previously rendered and do not violate Article I, § 7,
of the State Constitution.

**2. Retirement Systems § 5;   Administrative Law § 3—   Retirement
benefits may not be suspended on the basis of remuneration received
in part-time employment.**

Where a teacher has become a beneficiary of the Retirement System
upon retirement by reason of age and service, the accrued right to retire-
ment benefits may not be suspended under a resolution of the Board of
Trustees stipulating that payments for any calendar year should be sus-
pended after a beneficiary had earned the amount of $1,500 in part-time
employment, even though no deductions or payments to the fund were
made on the basis of the remuneration for such part-time employment,
since G.S. 135-18 (repealing G.S. 135-15) does not authorize the Board
of Trustees to pass such resolution either expressly or by implication,
and a person engaged in such part-time employment is not a teacher or
employee as defined in G.S. 135-1.

APPEAL by defendant from *Falls, J.,* May 15, 1967 Mixed Ses-
sion of JACKSON.

These are actions by W. E. Bird, former President of Western
Carolina College (now University and hereafter called "Western"),
an educational institution supported by and under the control of
the State of North Carolina, and W. B. Harrill, former teacher and
Acting Dean of Western, against the Teachers' and State Em-
ployees' Retirement System (referred to hereafter as the "System"),
to recover the monthly retirement allowance, for each, withheld by
the System for the month of December, 1966, and for declaratory
relief with respect to retirement benefits under Chapter 135 of the
General Statutes.

The causes were consolidated for trial, by consent. Jury trial
was expressly waived, and the causes were determined upon an
agreed statement of facts and the pleadings.

Bird, a resident of Jackson County, was born on July 21, 1890.
He was employed initially by Western in 1920 and was continuously
so employed until July 31, 1957. When the System was established
as of July 1, 1941, pursuant to Chapter 25, Public Laws of 1941, he
became a member and retained his membership until July 31, 1957,
paying a portion of his earnings, during all this time, to the System

as required by statute. By reason of age and service, he became eligible to retire as a member in good standing and he retired on July 31, 1957, elected to receive a retirement allowance under one of the elections open to him and applied for and received a retirement benefit from the System of $236.80 per month. Thus he became a "beneficiary" under the provisions of Chapter 135 of the General Statutes on July 31, 1957.

The monthly retirement benefit was paid to him monthly up to and including the month of November, 1966. But his retirement allowance for the month of December, 1966, was withheld by the System. Bird demanded the payment of this withheld benefit but the System continued to withhold it, and further, the System demanded that Bird pay to the System the sum of $6,156.80, alleging that Bird owed this amount to it.

The System asserted its actions were authorized under G.S. 135-18 and a Resolution passed by the System on October 13, 1965, to become effective January 1, 1966. It further alleged that Bird was not entitled to monthly retirement benefits for the last three months of 1963, the last eight months of 1964, the last eight months of 1965 and the last eight months of 1966 since in each such year his other earnings had exceeded the amounts allowed by the System.

Since July 31, 1957, Bird has not been under contract to Western. After July 31, 1957, at the request of the administrative officers of Western, he performed certain "emergency, part-time, temporary" teaching at Western for which he was paid on the basis of a fee paid for each course taught.

For this he received $1,856.68 by September 30, 1963; $1,707.00 by April 30, 1964; $1,706.66 by April 30, 1965; and $1,706.66 by April 30, 1966.

No part of this remuneration to Bird was contributed to the System; neither the State nor any of its agencies contributed any money to the System for the benefit of Bird for this period of time. Bird did not accrue any further longevity nor any further or increased retirement benefits from the System for any service during this time.

Bird, replying to the System, asserted that the acts of the System in withholding his monthly retirement allowance was arbitrary and capricious, wrongful and illegal and without authority in law. He further asserted that such acts were not pursuant to G.S. 135-18, that the Resolution of October 13, 1965, if adopted, was not pursuant to statute, and that the same was wrongful and illegal, beyond the authority of the System and was null and void.

This Resolution, passed by the Board of Trustees of the System on October 13, 1965, to be effective January 1, 1966, provided, *in-*

*ter alia,* that if a retired teacher were re-employed by a State college or agency in part-time employment, his retirement allowance would "be suspended for the balance of the calendar year after earnings in such" employment equalled $1,500.00.

The facts with respect to W. B. Harrill are similar. He was born on September 15, 1899, and he is also a citizen of Jackson County. When the System was created, he became a member and remained so until June 30, 1965. He had been employed at Western in 1947, and was, among other things, Acting Dean. He, too, from the beginning, paid his statutory contributions to the System. By reason of age and service he became eligible to retire as a member in good standing and retired from Western on June 30, 1965, elected to receive a retirement allowance under one of the elections open to him and applied for and received a retirement benefit from the System of $415.82 per month. Thus, he became a "beneficiary" under the provisions of Chapter 135 of the General Statutes on June 30, 1965. He, too, received his monthly retirement benefit up to and including November, 1966. But his retirement allowance for the month of December, 1966, was withheld by the System. Harrill also made demand, as had Bird, but the System continued to withhold and made demand, as it did on Bird, for $2,494.92 on the same grounds as in the Bird case, the amount applying to the last seven payments in 1966.

Since June 30, 1965, Harrill has not been under contract to Western. After June 30, 1965, at the request of the administrative officers of Western, he performed certain "emergency, part-time, temporary" teaching at Western for which he was paid on the basis of a fee paid for each course taught. For his services from January 1, 1966, through May 30, 1966, he received $1,706.69.

No part of this remuneration to Harrill was contributed to the System; neither the State nor any of its agencies contributed any money to the System for the benefit of Harrill for this period of time. Harrill did not accrue any further longevity nor any further or increased retirement benefits from the System for any service during this time.

Harrill raised the same issues as did Bird.

The court below, after finding (undisputed) facts as set out above, concluded that each plaintiff became a "beneficiary" under the provisions of Chapter 135 upon their respective retirement dates, and that each thereupon ceased to be a "member" of the System within the statutory meaning of the term. No exceptions were taken to these conclusions. The court then concluded that neither plaintiff ever again acted or became or was a "teacher" within the meaning of the statute after the respective retirement dates; that each,

upon retirement, had a vested interest in his retirement allowance; that each was entitled to recover his December 1966 allowance; that neither was indebted to the System; and that the System had no legal authority to promulgate the Resolution of October 13, 1965, nor to make demand on plaintiffs for recovery.

No resolution other than the said Resolution adopted October 13, 1965, to be effective January 1, 1966, was pleaded, offered in evidence or exhibited to the court.

The court entered separate judgments. Each adjudged the plaintiff was entitled to recover the amount of his retirement allowance for December, 1966, with interest, and that defendant was not entitled to recover any amount on account of retirement allowances previously paid to the plaintiff, and that defendant pay the costs. Defendant excepted and appealed.

*Van Winkle, Walton, Buck & Wall and Herbert L. Hyde for plaintiff appellees.*

*Attorney General Bruton and Mrs. Christine Y. Denson, Staff Attorney, for defendant appellant.*

BOBBITT, J. In *Bridges v. Charlotte,* 221 N.C. 472, 20 S.E. 2d 825, the constitutionality of Chapter 25, Public Laws of 1941, as amended by Chapter 143, Public Laws of 1941, was upheld. Although not the basis of decision, the opinion of Seawell, J., for the Court, strongly intimated, and the concurring opinion of Barnhill, J. (later C.J.), in which Winborne, J. (later C.J.), concurred, expressly stated: "The Retirement payment provided by this Act constitutes delayed compensation in consideration of services rendered. It is compensation for public services. Its purpose is to induce experienced and competent teachers to remain in service and thus promote the efficiency and effectiveness of the educational program." In *Brumley v. Baxter,* 225 N.C. 691, 697, 36 S.E. 2d 281, 285-286, 162 A.L.R. 930, 936, the opinion of Devin, J. (later C.J.), contains this statement: "In *Bridges v. Charlotte,* 221 N.C. 472, 20 S.E. 2d 825, it was declared that payments from the retirement fund to teachers after they had ceased to serve were not offensive to Art. I, sec. 7, of the Constitution, in that they were regarded as in the nature of delayed compensation for public services rendered, or delayed payments of salary." See also, *Motley v. Board of Barber Examiners,* 228 N.C. 337, 344, 45 S.E. 2d 550, 554, and *Bryant v. Woodlief,* 252 N.C. 488, 498, 114 S.E. 2d 241, 248.

It appears from the cases cited that this Court has accepted as established that the allowances to which a member of the System is

entitled upon retirement constitute compensation for public services previously rendered and therefore do not violate Article I, Section 7, of the Constitution, providing "(n)o person or set of persons are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

Attention is called to the statutory provisions set out below.

Chapter 195, Session Laws of 1943, authorized the employment "during the continuation of the present World War, and for six months after its termination, or at the termination of the school term in which such teachers shall be engaged," of persons who had retired on account of age. This statute provided expressly that, during the period of such re-employment, "all service retirement benefits to which such person is entitled" would be suspended. The provisions of this statute were codified as G.S. 135-15 in the original (1943) edition of the General Statutes.

Two sections of Chapter 1056, Session Laws of 1949, are pertinent. Section 8 thereof, which is now codified as G.S. 135-18, provides: "The board of trustees of the Teachers' and State Employees' Retirement System may establish and promulgate rules and regulations governing the re-employment of retired teachers and employees." Section 9 thereof provides: "Section 135-15 of the General Statutes is hereby repealed."

Defendant bases its position on the Resolution adopted by its Board of Trustees on October 13, 1965, effective January 1, 1966, which *Resolution* provides, (1) with reference to full-time employment, that "Retirement allowances will be suspended for each full calendar month of employment," and (2) with reference to *part-time* employment, that "Retirement allowances will be suspended for the balance of the calendar year after earnings in such part-time employment equal $1500."

Each plaintiff retired after having attained the age of sixty years, Bird on July 31, 1957, and Harrill on June 30, 1965. Each retired subsequent to the repeal of G.S. 135-15 of the original (1943) edition of the General Statutes, and subsequent to the enactment of Section 8, Chapter 1056, Session Laws of 1949, now codified as G.S. 135-18. Each retired prior to the adoption of said *Resolution* by said Board of Trustees on October 13, 1965.

Obviously, the said Resolution did not affect retirement allowances paid to plaintiffs during years prior to 1966, the subject of defendant's cross claims. What effect, if any, this Resolution had on plaintiffs' rights with reference to their accrued retirement allowances for 1966 is the question for decision.

When plaintiffs retired, and since the date of their retirement, no *statutory* provision has provided, either expressly or by implica-

tion, that their acceptance of public employment would suspend or otherwise impair their existing right to retirement allowances. Unless provided or authorized by statute, we are of opinion, and so decide, that plaintiffs' acceptance of part-time re-employment did not suspend or otherwise affect their retirement allowances. See Annotation, "Effect of re-entry into public employment on retirement pension previously granted to public officer or employee." 162 A.L.R. 1469 *et seq.* Decisions cited therein (p. 1470) hold that "under a statute not forbidding, either expressly or by implication, the re-entry into public employment of a public officer or employee retired with a pension, . . . a subsequent re-employment does not operate as a revocation or suspension of the pension granted." Also, see *Maybury v. Coyne,* 312 S.W. 2d 455 (Ky.).

We find it unnecessary to determine on this record to what extent, if any, plaintiffs' rights to their retirement allowances became vested so that the General Assembly could not by legislation constitutionally impair such rights. See Annotation, "Vested right of pensioner to pension," 52 A.L.R. 2d 437. See also *Dillon v. Wentz,* 227 N.C. 117, 41 S.E. 2d 202.

Decision on this appeal turns on whether the statutory provision enacted in 1949 and now codified as G.S. 135-18 conferred upon said Board of Trustees authority to establish and promulgate a rule or regulation providing that accrued · retirement allowances should be suspended under prescribed conditions if retired teachers or employees accept part-time re-employment. In our opinion, the general language of this statutory provision did not confer upon said Board of Trustees, expressly or by implication, authority to adopt the resolution on which defendant relies. G.S. 135-18 contains no reference to retirement allowances. The subject to which the contemplated rules and regulations will relate is unclear. Are they to relate to the readmission into the System of persons who retired prior to attaining the age of sixty years as provided in G.S. 135-3 (7)d, referred to below? Are they to relate to the prohibition of or limitations upon the re-employment of retired persons?

G.S. 135-18 refers expressly to "the re-employment of retired teachers and employees." Teachers and employees are defined in G.S. 135-1, as amended by Chapter 750, Session Laws of 1965, as "full-time" employees. G.S. 135-18 contains no reference to "emergency, part-time, temporary teaching," the type of part-time re-employment in which plaintiffs were engaged.

Plaintiffs' rights to retirement allowances had accrued and become payable in accordance with statutory provisions. No express authority to prescribe conditions for the suspension of such rights was conferred upon the Board of Trustees by G.S. 135-18; and, in

our opinion, authority *to suspend accrued statutory rights* may not be reasonably implied from the general terms of G.S. 135-18.

In our opinion, and we so hold, the authority, if any, conferred by G.S. 135-18 is insufficient to support a resolution which, under the conditions set forth therein, purports to suspend plaintiffs' rights to their accrued retirement allowances on account of their recall for "emergency, part-time, temporary teaching."

It is noteworthy that the statutory provisions now comprising G.S. 135-3(7) are based on Chapter 561, Session Laws of 1951. Subsection d thereof, relating to retirement prior to the attainment of the age of sixty years and subsequent employment and membership in the System, provides, *inter alia,* "(u)pon his subsequent retirement, he shall be entitled to an allowance computed, subject to the provisions of chapter 135, in accordance with such rules and regulations as the board of trustees may establish and promulgate as provided in § 135-15." As set forth above, the statute codified as G.S. 135-15 was repealed in 1949. Moreover, it contained no provision for the establishment and promulgation by the Board of Trustees of rules and regulations. While not determinative, the confusion in the statutory provisions lends support to our view that the terms of the statute now codified as G.S. 135-18 are too vague and general to be considered authority for adoption of a resolution suspending plaintiffs' rights in respect of their accrued retirement allowances.

In view of the foregoing, it is unnecessary to consider whether G.S. 135-18, if construed as conferring authority on the Board of Trustees to suspend plaintiffs' accrued statutory rights, would be invalid as violative of the constitutional principle that the General Assembly cannot delegate legislative power and, where authority is conferred on a commission or board, "the legislative body must declare the policy of the law, fix legal principles which are to control in given cases, and provide adequate standards for the guidance of the administrative body or officer empowered to execute the law." *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 61, 74 S.E. 2d 310, 316; 2 Strong, N.C. Index 2d, Constitutional Law § 7.

For the reasons stated, the judgments of the court below are affirmed.

Affirmed.