HARRY M. LEETE, ALBERT SEARS BUGG, THOMAS HOLT, CLAUDE F. BURROWS, II, CECIL CRAIG ALLEN, CHARLES A. BENNETT, WILLIAM S. BUGG, JAMES E. CRENSHAW, JR., AND THE OTHER TAXPAYERS OF WARREN COUNTY v. THE COUNTY OF WARREN, A BODY POLITIC AND CORPORATE; LUCIOUS HAWKINS, CHAIRMAN OF THE BOARD OF COMMISSIONERS OF WARREN COUNTY; O.L. MEEK, WILLIAM T. SKINNER, III, JAMES BYRD AND GEORGE E. SHEARIN, MEMBERS OF THE BOARD OF COMMISSIONERS OF WARREN COUNTY; AND SUSAN W. BROWN, FINANCE OFFICER OF WARREN COUNTY

No. 308A94

(Filed 28 July 1995)

### Constitutional Law § 131 (NCI4th)— county manager—severance pay—prohibited special emolument

An amount equal to six weeks pay ($5,073.12) authorized by a board of county commissioners to be paid to the county manager upon his voluntary resignation after nine years of service as county manager was a special emolument not in consideration of public service which violated Article I, Section 32 of the N.C. Constitution where the board referred to the payment as "severance pay"; the county manager had been paid all compensation due him for services rendered; there was no written contract providing for severance pay; and it is clear that the compensation was not for prior services rendered.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 258 et seq.**

**LEETE v. COUNTY OF WARREN**

[341 N.C. 116 (1995)]

Justice WHICHARD dissenting.

Justices FRYE and WEBB join in this dissenting opinion.

Appeal as of right by plaintiffs pursuant to N.C.G.S. § 7A-30(1) from the unanimous decision of the Court of Appeals, 114 N.C. App. 755, 443 S.E.2d 98 (1994), reversing an order entered by Ellis (B. Craig), J., on 25 March 1993 in Superior Court, Warren County. Heard in the Supreme Court 15 March 1995.

*Banzet, Banzet & Thompson, by Julius Banzet, III and Lewis A. Thompson, III, for plaintiff-appellants.*

*Michael B. Brough & Associates, by Michael B. Brough and Charles T. Johnson, Jr., for defendant-appellees.*

ORR, Justice.

Plaintiffs instituted this action on 22 February 1993, alleging that the Warren County Board of Commissioners ("the Board") unlawfully authorized severance pay in the amount of $5,073.12 to Mr. Charles Worth upon his voluntary resignation after nine years of service as County Manager.

Plaintiffs sought and obtained a temporary restraining order on 22 February 1993, preventing the Board from making the payment to Mr. Worth. The defendants filed an answer on 22 March 1993. On 23 March 1993, plaintiffs' motion for a preliminary injunction came on for hearing which was transformed into a hearing on the merits by consent of the parties. On 25 March 1993, the trial court entered an order permanently enjoining the Board from making the payment to Mr. Worth. Defendants appealed to the North Carolina Court of Appeals, which reversed the trial court's ruling. Plaintiffs filed notice of appeal of right with this Court based upon the substantial constitutional issue raised. N.C.G.S. § 7A-30(1) (1989).

The minutes of the 1 February 1993 meeting of the Board show that during the executive session of its regular meeting, Charles Worth announced his resignation from the County Manager position effective 1 March 1993 to accept employment in the office of the newly elected representative from the First Congressional District. The Board accepted Mr. Worth's resignation. Although it is not reflected in the 1 February meeting minutes, the complaint subsequently filed in this action alleges, and the defendants admitted in

their answer, that at the same meeting, Mr. Worth requested "payment of an additional sum equal to three months salary." The Board voted unanimously to pay Mr. Worth "six weeks of severance pay" totalling $5,073.12. Returning to open session, the Board announced Mr. Worth's resignation, and the minutes of this meeting reflect that the Board's chairman then "expressed gratitude to Mr. Worth for the quality of service he has rendered to Warren County during his nine-year tenure."

Subsequently, at the mid-monthly meeting of the Board on 17 February 1993, several citizens appeared before the Board to voice opposition to the granting of severance pay to Mr. Worth. Supporters of Mr. Worth were also present, one of whom indicated that the Board may have called the payment by the wrong name and suggested that it be considered as pay to Mr. Worth for "meritorious service." During the executive session which followed the 17 February 1993 regular meeting, one member of the Board, after rethinking his position on the propriety of granting the severance pay, made a motion to rescind the motion made at the 1 February meeting to grant six weeks' "severance pay" to Mr. Worth. The motion failed for lack of a second. As a result, plaintiffs filed this action seeking to enjoin the Board's action to follow through on its decision to pay Mr. Worth the announced severance pay.

Plaintiffs contend that the proposed payment in this case constitutes an unlawful gratuity and an "illegal and wrongful depletion of public funds" on the grounds that the defendants' proposed payment of "severance pay" to Mr. Worth violates Article I, Section 32 of the North Carolina Constitution. Article I, Section 32 provides as follows: "No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. art. I, § 32. Thus, by its definition, Section 32 precludes exclusive or separate emoluments except "in consideration of public services." *See Brumley v. Baxter*, 225 N.C. 691, 36 S.E.2d 281 (1945).

Section 32 concerning emoluments dates from 1776 deriving "originally from a section of the Virginia Declaration of Rights." *See* John V. Orth, *The North Carolina State Constitution: A Reference Guide* 74 (1993). This section's immediate predecessor, which also prohibited exclusive emoluments and privileges, was Article I, Section 7. *See* 5 N.C. Index 4th *Constitutional Law* § 133 (1990).

LEETE v. COUNTY OF WARREN

[341 N.C. 116 (1995)]

It is well settled that absent evidence to the contrary, it will always be presumed "that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E.2d 681, 686-87 (1961); *accord, Painter v. Wake County Board of Education*, 288 N.C. 165, 178, 217 S.E.2d 650, 658 (1975). This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence. *Id.* In the case *sub judice*, the plaintiffs have met their burden.

The Legislature has vested county boards of commissioners with broad discretion to direct fiscal policy for the county, N.C.G.S. § 153A-101 (1991), and with specific authority to fix compensation for all county officers, N.C.G.S. § 153A-92 (1991). The county manager is appointed by the board of county commissioners to act as the chief administrator of county government and serves at its pleasure. N.C.G.S. § 153A-82 (1991). Mr. Worth, as a county manager, held a public office; as in other jurisdictions, in North Carolina, "a public office is not created for the benefit of the holder thereof. It is created for the purpose of carrying on the operations of government." *De Marco v. Bd. of Chosen Freeholders*, 36 N.J. Super. 382, 386, 115 A.2d 635, 637 (1955), *aff'd*, 21 N.J. 136, 121 A.2d 396 (1956). "The emoluments of office are presumed to be nothing more than an equivalent for the labor it imposes." *Id.* Thus, the right of a public officer to receive compensation can only arise out of the rendition of the public services related to his office.

In this case, however, the compensation at issue was labeled as severance pay. "Severance pay" is defined as

[p]ayment by an employer to employee beyond his wages on termination of his employment. Such pay represents a form of compensation for the termination of the employment relation, for reasons other than the displaced employee's misconduct, *primarily to alleviate the consequent need for economic readjustment but also to recompense the employee for certain losses attributable to the dismissal.*

*Black's Law Dictionary* 1374 (6th ed. 1990) (emphasis added).

Plaintiffs argue that, in the instant case, Mr. Worth sought and the Board granted additional compensation in excess of the compensation for services previously rendered. Here, the defendants admitted

in their answer that all compensation due Mr. Worth under the terms of his employment had been paid. Defendants, nevertheless, contend that Mr. Worth was being permissibly compensated in consideration of previously rendered public services. The position advocated by defendants is directly contradicted by the record. The specific delineation by the Board of the $5,073.12 as "severance pay" and by their admission in their answer that Mr. Worth had been paid all compensation due him for services rendered negates any such argument.

While numerous cases over the years have interpreted Article I, Section 32, few appear to have any direct factual similarity to the case *sub judice*. The principle case on which plaintiffs rely is *Brown v. Comrs. of Richmond County*, 223 N.C. 744, 28 S.E.2d 104 (1943). In *Brown*, the plaintiff was elected in 1938 to the two-year term of office of Judge of the Recorder's Court of Richmond County. In 1939, the General Assembly passed a local act abolishing the Recorder's Court. Then in 1941, the General Assembly passed an act, chapter 11 of the Private Laws of 1941, requiring the Richmond County Board of Commissioners to pay to the plaintiff the salary that plaintiff would have earned had the General Assembly not abolished his office. The county refused, and plaintiff filed a lawsuit. The issue before this Court was whether the General Assembly could legally authorize the Richmond County Board of Commissioners to pay the plaintiff his salary accruing after the date the Recorder's Court ceased to exist. Interpreting Article I, Section 7, the predecessor to Article I, Section 32 under consideration here, this Court held that the plaintiff was not entitled to receive the payment because such compensation would amount to a constitutionally prohibited gift or gratuity of public money.

> [T]he Legislature has no power to compel or even to authorize a municipal corporation to pay a gratuity to an individual to adjust a claim which the municipality is under no legal obligation to pay. Nor may it lawfully authorize a municipal corporation to pay gifts or gratuities out of public funds.

*Brown*, 223 N.C. at 746, 28 S.E.2d at 105-06 (citations omitted). Continuing, the *Brown* court reasoned that

> [a] municipality cannot lawfully make an appropriation of public moneys except to meet a legal and enforceable claim, and can make no payment upon a claim which exists merely by reason of some moral or equitable obligation which a generous, or even a

just, individual, dealing with his own moneys, might recognize as worthy of some reward.

*Id.*

We find that the similarities between *Brown* and this case are compelling. In *Brown*, the plaintiff was to be compensated for duties that were not performed. Here, Mr. Worth also was to be compensated for services not performed. Defendants argue and the Court of Appeals found *Brown* distinguishable from the case at bar, reasoning that Richmond County was being directed by the General Assembly to make a payment not "in consideration of public services" because the services would never be rendered. The Court of Appeals concluded, in the case *sub judice*, that because Mr. Worth had served the County for nine years, it was permissible to compensate him for services previously rendered. As we stated earlier, the record clearly reflects that the compensation was not for prior services rendered. Mr. Worth was paid all benefits due him, including accrued annual leave in the amount of $4,227.60.

Salary, pension, insurance and similar benefits received by public employees are generally not unconstitutional exclusive emoluments and privileges. They constitute compensation in consideration of services rendered. *Harrill and Bird v. Retirement System*, 271 N.C. 357, 156 S.E.2d 702 (1967); *Insurance Company v. Johnson, Comr. of Revenue*, 257 N.C. 367, 126 S.E.2d 92 (1962); *Bridges v. City of Charlotte*, 221 N.C. 472, 20 S.E.2d 825 (1942). Mr. Worth worked one month after giving notice of his resignation and received all compensation due him under the terms of his employment with the County. Any additional compensation would be compensation beyond that due for services rendered and, thus, constitutionally impermissible.

The Court of Appeals' reliance on *Brumley v. Baxter*, 225 N.C. 691, 36 S.E.2d 281, and *Hinton v. State Treasurer*, 193 N.C. 496, 137 S.E. 669 (1927), to justify the proposed appropriation in this case is misplaced. Both of those cases dealt with public funds being spent for veterans. In *Brumley*, the City of Charlotte proposed to donate valuable real property for the purpose of providing recreational facilities for persons who were then serving in the armed forces or were World War II veterans. The facilities were to be permanent and available for use for many years. In *Hinton*, the Legislature enacted a law for the purpose of making loans with favorable terms, secured by mortgages, to World War I veterans to assist them in acquiring homes. Essentially, the issue in both cases was whether such emoluments to the veterans

were for a public purpose as contemplated by Article I, Section 7 (now Section 32), if such payment were made for past services rendered. This Court held that such emoluments were for a public purpose even though they were made for previously rendered services, reasoning that

> "[s]ince the dawn of civilization the nations of the earth have always recognized an obligation to those of its citizens who bore arms in their defense. . . . Appropriate recognition of it has always served to encourage patriotism and the promotion of the public welfare." [*Hinton*, 193 N.C. at 505, 137 S.E. at 674.] "Services rendered in such a cause must necessarily be a public service." *State v. Clausen*, 113 Wash. 570[, 580, 194 P. 793, 796 (1921).]

*Brumley*, 225 N.C. at 696-97, 36 S.E.2d at 285.

To say that the instant case is comparable to circumstances surrounding the emoluments issue raised in *Brumley* and *Hinton* is without merit. Here, the compensation authorized was not for prior public service, nor does severance pay for a county manager resigning voluntarily to take a more lucrative position equate with providing benefits to veterans who had served this country in time of war.

Defendants next attempt to bolster their argument in favor of the proposed payment by the fact that the General Assembly has authorized severance pay to state employees under circumstances of a reduction-in-force or the closing of a State institution. *See* N.C.G.S. § 143-27.2 (1993). In this case, "severance pay" as authorized by the statute is not applicable. Here, the Legislature has not authorized the expenditure of public funds in the nature of severance pay to public employees who voluntarily resign their position, nor is this a situation in which Mr. Worth is in need of economic readjustment assistance because he left his position for an advancement opportunity. At the time Mr. Worth was appointed to his position, the Board entered no agreement with Mr. Worth for severance pay in the event he voluntarily relinquished his position. In fact, Mr. Worth had no written employment contract with Warren County. Because there was no written contract providing for severance pay or additional compensation beyond his salary for services rendered, the "severance pay" which Mr. Worth seeks is no more than a request for a gratuity, which the Board had no authority to pay. Any additional compensation to Mr. Worth would be without consideration and represents a claim which Mr. Worth could not enforce either in law or in equity.

The wisdom of prohibiting such additional compensation for a public servant official upon his voluntary resignation, absent a contract stating otherwise, is grounded in the interest of good government and founded on sound reasons of public policy. First, the public is protected by restraining those in office from taking advantage of their positions and official influence to unduly secure added compensation not contemplated and to which they were not entitled when they were selected for and accepted office. Second,

> [t]he funds of a municipality are necessarily, directly or indirectly, raised by taxation. Consequently, the expenditure of money by a municipality for private purposes does or may necessarily result in the taking of the property of individuals under the guise of taxation for other than public uses. In such a case it can make no difference that no immediate provision of taxes is made. The use of public funds for private purposes increases the burden of taxation as certainly as if a tax for a private purpose was directly levied.

*Brown*, 223 N.C. at 746, 28 S.E.2d at 106.

While we in no way imply that the Board's action represents anything other than an attempt to generously reward Mr. Worth for a job well done, it falls well beyond the bounds of an acceptable retirement present. Thus, for the reasons set forth in this opinion, we hold that the proposed payment of $5,073.12 to Mr. Worth upon his resignation does violate Article I, Section 32 of the North Carolina Constitution. Accordingly, we reverse the decision of the Court of Appeals and reinstate the trial court's order.

REVERSED.

Justice WHICHARD dissenting.

The majority acknowledges, but relegates to insignificance, the central and controlling facts that when the defendant-board voted to make the payment in question, the recipient had been a county employee for nine years, was still a county employee, and was scheduled to remain one for a brief period. Given these undisputed facts, the conclusion that the payment was not in consideration of public service is untenable. The defendant-board unquestionably has the authority to set the compensation of its officers. N.C.G.S. § 153A-92 (1991). That is what it has done. The payment constitutes a mere adjustment in the recipient-employee's salary—nothing more, nothing

LEETE v. COUNTY OF WARREN

[341 N.C. 116 (1995)]

less. The fact that it was voted near the end of his service to the county is devoid of legal or constitutional significance.

The fact that the recipient had been paid all he was due under prior board action likewise lacks legal or constitutional significance. As the Court of Appeals opinion states, "the primary inquiry under Article I, [Section] 32 is not whether the recipient has a legal or enforceable claim against the government entity granting the benefit, but rather, whether the governmental entity took such action in consideration of the recipient's public service." *Leete v. County of Warren*, 114 N.C. App. 755, 759, 443 S.E.2d 98, 101 (1994). The defendant-board was statutorily empowered to adjust the recipient's salary for the brief period of his service that remained, and that is what it has done. Its choice of terminology ("severance pay"), while perhaps politically unwise and unfortunate, does not render the payment any less in fact "in consideration of public service."

*Brown v. Comrs. of Richmond County*, 223 N.C. 744, 28 S.E.2d 104 (1943), on which the majority relies in part, is neither on point nor similar. There the recipient of public funds was paid the salary he would have received had the office he once held not been abolished. It is clear beyond peradventure that the recipient there performed no public service as consideration for the sum received, in that the office in which he would have performed such service was nonexistent during the period for which the sum was appropriated. By contrast, when the defendant-board voted to pay the sum at issue here, the recipient had been fulfilling the duties of his public position for nine years, was still fulfilling them, and was to continue to fulfill them for a brief period in the future. The payment thus constituted a mere adjustment, statutorily authorized and constitutionally permissible, in the salary formerly set for the recipient's service to the county.

If the defendant-board had made an appropriation to someone hired for the congressional position who at the time was not an employee of the county, such a payment would have constituted a special emolument not in consideration of public service. That is not the case, however. As a county employee, the recipient was entitled to request, and the board was empowered to grant, an adjustment in the salary paid him for his services. The conclusion that the increase in salary gives the recipient compensation without consideration is unsupported by the record and divorced from reality.

Any perceived folly in the payment is not properly this Court's concern. As the majority acknowledges, the presumption is that pub-

lic officials discharge their duties in good faith and in accord with the spirit and purpose of the law. *Painter v. Board of Education,* 288 N.C. 165, 178, 217 S.E.2d 650, 658 (1975); *Huntley v. Potter,* 255 N.C. 619, 628, 122 S.E.2d 681, 686-87 (1961). The record here contains evidence that supports this presumption, in that the chair and one member of the defendant-board expressed gratitude to the recipient "for the quality of service he had rendered to Warren County during his nine-year tenure." There is no evidence that contravenes the presumption. The payment thus is both constitutional and legal, and its wisdom or the lack thereof is properly for the voters of Warren County to determine in the electoral process. In addition to lacking constitutional or legal merit, the majority's decision constitutes an intervention, unwarranted and unwise, in matters properly left to the discretion of duly elected county officials and ultimately to the voters at whose sufferance they serve.

Judge John C. Martin's opinion for the Court of Appeals is well reasoned, well written, and correct. I would affirm it in all respects, and I therefore dissent.

Justices FRYE and WEBB join in this dissenting opinion.