The Honorable Randy Laverty State Senator Senate Co-Chair Legislative Joint Auditing Committee Division of Legislative Audit 172 State Capitol Little Rock, Arkansas 72201
The Honorable J. R. Rogers State Representative House Co-Chair Legislative Joint Auditing Committee Division of Legislative Audit 172 State Capitol Little Rock, Arkansas 72201
Gentlemen:
I am writing in response to your request for an opinion on the following questions concerning sabbatical and severance pay for employees of higher education institutions:
 1. May a state-supported institution of higher education grant a sabbatical with pay from public funds to a former employee who resigned or was terminated?
 2. May a state-supported institution of higher education grant severance pay from public funds to a former employee who resigned or was terminated?
 3. In answering the first two questions, does it matter whether the former employee was an administrator, professor, or coach?
 4. In answering the first two questions, does it matter whether the institution of higher education agreed by contract with the former employee to grant sabbatical pay or severance pay, either upon resignation or termination? *Page 2 
As background for these questions, you have asked me to assume that there are no plans for the former employee to subsequently teach, coach, consult, or otherwise perform services for their former university employer following resignation or termination.
RESPONSE
Because my research indicates that the answer to your first two questions probably hinges upon the answer to your fourth question, I will direct my initial response to Question 4. In my opinion, it probably does matter whether the institution of higher education agreed by contract with the former employee to grant sabbatical pay or severance pay. This response assumes that the agreement was supported by mutual consideration and that the payment amount was not so unreasonable as to constitute a gratuity. With regard to your first two questions, absent a contract or other evidence of mutual consideration, the answer is likely "no," in my opinion. A public institution of higher education likely lacks authority in that instance to grant "sabbatical" or "severance" pay to a former employee who resigned or was terminated. Such a payment would appear to be an unconstitutional gratuity. Examples of payments that would be supported by consideration include payment of compensation due under the terms of the former employment and payment made in settlement of a bona fide dispute. In my opinion, the answer to your third question is "no."
Question 1 — May a state-supported institution of higher educationgrant a sabbatical with pay from public funds to a former employee whoresigned or was terminated?
I must first note that it seems incongruous to grant "sabbatical" pay to someone who has resigned or been terminated, given that the concept of a "sabbatical" ordinarily includes a period of leave followed by continued service. This is evident from a review of the policies and procedures of several Arkansas institutions of higher education.See, e.g., ASU [Arkansas State University] Faculty Handbook of Policiesand Procedures at 49 ("The individual granted a compensated leave is obligated to return to the University for at least one academic year."); Henderson State University Faculty Handbook at 55 ("The institution will provide faculty on sabbatical leave with full contractual salary and *Page 3 
benefits for a one-semester leave. . . . Faculty accepting support must agree to continue service to the institution for a least a full academic year following the sabbatical leave."). While I am therefore somewhat uncertain as to the precise premise of this question, I will nevertheless proceed to address it as posed.
As explained below in response to your fourth question, determining whether an institution may grant such "sabbatical" pay may depend upon whether the institution agreed by contract to make the payment. I refer you to the discussion of that issue below. In the absence of a contract, however, and assuming that the employee has been paid all compensation due under the terms of his or her employment, I believe the answer to the above question is in all likelihood "no." A state-supported institution of higher education generally may not grant a publicly-funded sabbatical pay to a former employee who resigned or was terminated, given that such a payment appears to be in the nature of a gratuity. Cf. Op. Att'y Gen. 2001-222 (opining with regard to the question of a severance payment by a city to a city manager that "a court would be particularly critical of a severance payment that was not authorized in the contract itself[,]" and that "[a]ny such payment would in all likelihood be barred as an impermissible gift unless the payment represented a reasonable compromise of a disputed claim." (Citation omitted.)) Such gratuitous payment would be subject to challenge as an illegal exaction in violation of Art. Const. art. 16, § 13. It would also likely be contrary to Ark. Const. art. 5, § 27, which states:
 No extra compensation shall be made to any officer, agent, employee, or contractor, after the service shall have been rendered, or the contract made; nor shall any money be appropriated or paid on any claim, the subject-matter of which shall not have been provided for by preexisting laws; unless such compensation, or claim, be allowed by bill passed by two-thirds of the members elected to each branch of the General Assembly.
There are very few Arkansas cases construing art. 5, § 27, but other jurisdictions with similar "extra compensation" proscriptions have interpreted such provisions to prohibit payments after service has been rendered because such payments are in the nature of gratuities. See,e.g., State ex re. Bonsall v. Case, 172 Wn. 243, 246, 19 P.2d 927 (1933) (citing a provision in Washington's constitution similar to *Page 4 
Ark. Const. art. 5, § 27, for the proposition that "a gratuity, extra compensation or a bonus, whatever it may be called, cannot be paid to an employee of the state, in addition to his regular salary, after the service has been rendered."); Simpson v. Tobin, 367 N.W.2d 757 (S. Ct. S.D. 1985) ("Article XII, § 3 [of the South Dakota Constitution] prohibits bonuses in the form of extra compensation over and above that which was bargained for in the employment contract, while also prohibiting rewards after services have been rendered." (Citation omitted)).
It has been held, however, that a payment supported by consideration is not a gratuity. El Paso County v. Jeffers, 699 S.W.2d 375, 377, (Tex.App.-El Paso 1985) (concluding that workers' compensation benefits were not "extra compensation" within the meaning of Tex. Const. art. III, § 53, stating: "Payment of workers' compensation benefits is not a gratuity, but is part of an employee's overall compensation based upon the contract of employment. Such payments were not a gratuity or donation."). See also City of Omaha. v. City of Elkhorn, 276 Neb. 70,84, 752 N.W.2d 137 (2008) (addressing the constitutionality of certain negotiated severance benefits in light of Nebraska's "extra compensation" prohibition — Neb. Const. art. III, § 19 — and concluding: "If adequate consideration supports the severance provisions, then the payments are not gratuities and the severance provisions are enforceable.") Accord Fla.Op. Att'y Gen. 2007-26, 2007 WL 1890763 (Fla. AG) (stating with regard to a Florida law similar to Ark. Const. art. 5, § 27 that "[e]xtra compensation generally refers to an additional payment for services performed or compensation over and above that fixed by contract or law when the services are rendered."); Neb. Op. Att'y Gen. No. 95063, 1995 WL 471392 (Neb. AG) ("[T]he purpose of state constitutional provisions such as Art. III, § 19 which prohibit extra compensation to public employees after services are rendered is to prevent payments in the nature of gratuities for past services. 67 C.J.S. Officers § 236.").
Consistent with the above, the Nebraska Attorney General observed in the foregoing opinion that "[i]t becomes apparent that a payment to a state employee upon his or her termination for which the state receives nothing would constitute a gratuity forbidden by Art. III, § 19."Id. In my opinion, this statement aptly summarizes the controlling principle in response to your first question. The granting of a sabbatical with pay to one who has resigned or been terminated would appear to be an unconstitutional gratuity, in the absence of some benefit to *Page 5 
the state or detriment to the former employee sufficient to obligate the state to pay. As noted above, the possibility of a contractual obligation in this regard is discussed below in response to your fourth question.
Question 2 — May a state-supported institution of higher educationgrant severance pay from public funds to a former employee who resignedor was terminated?
Generally "no," consistent with the response to Question 1 above. It is my opinion that a higher education institution has no authority to grant such pay, unless perhaps the payment represents a compromise of a legal dispute or was a negotiated term of a contract. This latter possibility is discussed further below in response to your fourth question.
I assume you are using the term "severance pay" as that term is commonly understood:
 [p]ayment by an employer to employee beyond his wages on termination of his employment. Such pay represents a form of compensation for the termination of the employment relation, for reasons other than the displaced employee's misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense the employee for certain losses attributable to the dismissal.
Leete v. County of Warren, 341 N.C. 116, 119, 459 S.E.2d 232 (1995), quoting Black's Law Dictionary 1374 (6th ed. 1990) (emphasis omitted).Cf. Gray v. Mitchell, 373 Ark. 560, 570, ___ S.W.3d ___ (2008) (tacitly acknowledging this definition when noting that the payment of "severance pay" by the Little Rock School Board to Dr. Roy G. Brooks "allowed the School Board to remove Dr. Brooks from his position and replace him with a person who, in the School Board's opinion, would be a better superintendent.") Accord Mace v. Conde Nast Publication, Inc.,155 Conn. 680, 237 A. 2d 360
(1967). See also Black's Law Dictionary 1406 (8th ed. 2004) (defining "severance pay" as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee. Such a *Page 6 
payment is often made in exchange for a release of any claims that the employee might have against the employer.")
Such payment has been determined to be an unlawful gratuity in the absence of legislative authorization or consideration, e.g., a contract providing for severance pay or facts indicating that the payment was a proper settlement of a legal dispute. See, e.g., Ohio Op. Att'y Gen.2007-101, 2007 WL 1739765 (Ohio AG); Leete v. County of Warren,supra; Neb. Op. Att'y Gen. No. 95063, supra. The Ohio Attorney General opinion addressed the question of whether the Secretary of State had the authority to make severance payments to certain employees who anticipated separating from state service at the end of the incumbent's term. It was observed that the employees had no contractual right to their positions and could be terminated at any time and without cause. The Attorney General cited several previous opinions, including one involving severance payments proposed to be granted to the executive director of a children's board after the director resigned. The latter opinion, Ohio Op. Att'y Gen. 98-027, stated that "it is difficult to image" that the payments "serve a public purpose. . . ." The Attorney General relied upon the opinions to conclude that the payments in question "were solely for the personal benefit of the employees. . . . [T]hey are more in the nature of a gratuity to the employee, which a public office is without the authority to pay." Ohio Op. 2007-101 at 8. This opinion is echoed in the North Carolina Supreme Court's ruling inLeete v. County of Warren, supra, involving a challenge to severance pay granted by the Warren County Board of Commissioners to the County manager upon his voluntary resignation after nine years of service. It was argued that the payment constituted "an unlawful gratuity and an `illegal and wrongful depletion of public funds'" based upon a constitutional provision prohibiting additional compensation beyond that due for public services (N.C. Const. art. I, § 32). 341 N.C. 116, 118. After noting the admission that the former manager was paid all compensation due him for services rendered, and the absence of legislation authorizing severance pay to public employees who voluntarily resign, id. at 120, the court concluded: "Because there was no written contract providing for severance pay or additional compensation beyond his salary for services rendered, the `severance pay' which Mr. Worth seeks is no more than a request for a gratuity, which the Board had no authority to pay. Any additional compensation to Mr. Worth would be without consideration and represents a claim which Mr. Worth could not enforce either in law or in equity." Id. at 122. *Page 7 
In the Nebraska opinion, the Attorney General addressed the legality of a negotiated resignation package that included payment of one-half of the individual's yearly salary. The question was framed as "whether the payment contemplated . . . is a permissible `settlement' or an impermissible `severance.'" Neb. Op. Att'y Gen. 95063 at 5. After noting that the "extra compensation" proscription in the state constitution "is intended to prohibit the payment of gratuities by the State," the Attorney General observed:
 With this rule in mind, it becomes apparent that a payment to a state employee upon his or her termination for which the state receives nothing would constitute a gratuity forbidden by Art. III, § 19. For example, if a state employee voluntarily retires after 50 years of service and receives a payment of $25,000 solely for his long and faithful service, such a payment could be characterized as a gratuity and would clearly be improper. Similarly, if an employee voluntarily resigns in a situation where there is no controversy and receives a payment from the State which is actually a `severance,' such a payment would be improper. On the other hand, a payment to a state employee upon termination as a result of the legitimate `settlement' of a personnel matter which includes the resolution of potential litigation and/or the resolution of difficult personnel problems involving actual legal disputes is not a gratuity since the State would receive something for its money, e.g., a release from potential liability and closure of legal disputes which impaired the ability of the state agency to function. The determination of `severance' versus `settlement' must be made on a case-by-case basis based upon the facts surrounding each situation.
Id. at. 6. The opinion goes on to list a number of relevant factors indicating a "settlement," including potential liability for the agency growing out of the termination — perhaps based upon the employee's contract rights — and a settlement amount that is not so unreasonable as to itself constitute a gratuity. Id.
If faced with the question, I believe an Arkansas court would agree with the above authorities' approach to "severance pay." Having found no Arkansas statute that *Page 8 
generally authorizes the expenditure of public funds in the nature of "severance pay" for a former university employee, it is my opinion that a higher education institution has no authority to grant such pay, unless perhaps the payment represents a compromise of a legal dispute or was a negotiated term of an employment contract. This latter possibility is discussed further below in response to your fourth question.
Question 3 — In answering the first two questions, does it matterwhether the former employee was an administrator, professor, orcoach?
"No," in my opinion. I see no basis for drawing a distinction between these positions when addressing the general question of whether "sabbatical" or severance pay may be granted to a former employee who resigned or was terminated.
Question 4 — In answering the first two questions, does it matterwhether the institution of higher education agreed by contract with theformer employee to grant sabbatical pay or severance pay, either uponresignation or termination?
In my opinion, the answer to this question is probably "yes." As a general proposition, I believe it would matter whether the institution agreed by contract to make the payment.
In considering the possible authority of a higher education board of trustees to agree by contract to grant "sabbatical" or "severance" pay upon an employee's resignation or termination, it is first necessary to address the various appropriation, budgetary, and other fiscal laws that may bear on the question. This includes the "General Accounting and Budgetary Procedures Law" (A.C.A. § 19-4-101 et seq., (Repl. 2007)), the "Regular Salaries Procedures and Restrictions Act" (A.C.A. § 19-4-1601
(Repl. 2007) and A.C.A. § 21-5-101 (Repl. 2004)), and the "Higher Education Expenditure Restriction Act" (A.C.A. §§ 6-63-301 — 315 (Repl. 2003 and Supp. 2007)). These laws to a certain degree limit the fringe benefits or terms that may be included in the contract of an employee of a higher education institution. As I recently had occasion to observe, for instance, a provision of the Higher Education Expenditure Restriction Act — A.C.A. § 6-63-309 — in conjunction with the applicable appropriation act, fixes the allowable public salary *Page 9 
payable to an employee listed in that statute.[1] Op. Att'y Gen.2008-118. Thus, an institution of higher education may not use its "cash funds" to exceed the salary cap set by subsection 6-63-309. Id. at 8 (citing Gipson v. Ingram, 215 Ark. 812, 223 S.W.2d 595 (1949), and Arkansas Constitution, Article 16, section 4.[2] I also concluded that a higher education institution could not provide a "bonus" or a "plan of deferred compensation" in excess of the statutorily-authorized compensation for a university employee. Op. 2008-118 at 10-11. The bonus was clearly precluded by the Regular Salaries Procedures and Restrictions Act, which provides in relevant part:
 No employee authorized by the General Assembly shall receive from appropriated or cash funds, either from state, federal, or other sources, compensation in an amount greater than that established by the General Assembly as the maximum annual salary for the employee unless specific provisions are made therefor by law. . . .
A.C.A. § 19-4-1601(b)(3)C) (Repl. 2007). See also A.C.A. § 21-5-101(b)(3)(C) (Repl. 2004). *Page 10 
The deferred compensation plan was determined to be a benefit over and above salaries that could not be provided absent statutory authorization. Op. 2008-118 at 11. This reasonably followed from a previous Attorney General Opinion involving the procurement of life insurance policies that would have provided plan benefits to the president of a community college after his employment terminated. In Op. Att'y Gen. 2002-109, my predecessor concluded that such a benefit plan had to be authorized by statute. This conclusion was based upon the General Accounting and Budgetary Procedures Law, as well as the Higher Education Expenditure Restriction Act. As noted in the opinion, pursuant to the General Accounting and Budgetary Procedures Law, the appropriation for "Personal Services" includes "employee benefits that are legally authorized." A.C.A. § 19-4-521 (Repl. 2007). Finding no statutory authority for the proposed benefit plan at issue, my predecessor questioned whether the college could fund the plan. Op. 2002-109 at 4. The relevant provision of the Higher Education Expenditure Restriction Act states in pertinent part that "[n]o employee drawing a salary or other form of compensation from an institution of higher education shall be paid an additional salary or receiveadditional compensation other than reimbursement for actual expensesfrom that institution. . . ." A.C.A. § 6-63-307(a) (Repl. 2003) (emphasis added). It was concluded that this provision does not prevent the receipt of employee benefits over and above salaries as long as the benefits are authorized by statute. Op. 2002-109 at 6.
As reflected by these opinions, state law would generally prevent an institution of higher education from agreeing to use public funds to compensate an employee in excess of his or her legislatively-established maximum salary, whether in the form of a salary supplement, a bonus, or a benefit plan, absent statutory authorization. In my opinion, the General Assembly established this proscription in relation to compensation or benefits that are provided in consideration of services rendered, consistent with that body's constitutional power and duty to set the salaries of state employees. Ark. Const. art. 16, § 4. This view finds support in the statutory language. Both the Regular Salaries Procedures and Restrictions Act and the Higher Education Expenditure Restriction Act speak in terms of prohibiting employees from receiving "compensation" in addition to their fixed "salary." Based on the canon of statutory construction known as "noscitur a sociis," which translates as "it is known from its associates," the term "compensation" suggests emoluments similar to "salary" that are provided in consideration of services *Page 11 
rendered. See generally Weldon v. Southwestern Bell Telephone Co.,271 Ark. 145, 607 S.W.2d 395 (1980) (noting that the doctrine of "noscitur a sociis" can have the effect of limiting the scope of general language to the specific language of its context.); Random HouseWebster's Unabridged Dictionary 1693 (2d ed. 20bly 1) (defining "salary" as "a fixed compensation periodically paid to a person for regular work or services.") See also Leete, supra, 341 N.C. at 121 (noting that "[s]alary, pension, insurance and similar benefits received by public employees . . . constitute compensation in consideration of services rendered.")
Returning to your specific question regarding "severance pay," it appears that such pay as it is commonly understood does not fall within the existing limits set by the state appropriation and budgetary laws. As noted above in response to your second question, severance pay is a form of compensation distinct from wages and represents consideration for the termination of employment. So-called "sabbatical" pay with no anticipated future services would similarly seem to be distinct from salary or other benefits that are addressed by current law.
To be clear, this is not intended to suggest that such pay is generally authorized. To the contrary, as explained above, in the absence of a statute authorizing "severance" or "sabbatical" pay for a state employee who has resigned or been terminated, such payment would in my opinion ordinarily likely constitute "extra compensation" contrary to Ark. Const. art. 5, § 27. As also indicated above, however, the existence of a contract could potentially obviate the proscription. This will of course depend upon whether the particular employer has the authority to negotiate such a payment agreement. The terms of any given contract could also be crucial in judging the appropriateness of a "severance" or "sabbatical" payment.
In the case of a higher education board of trustees (hereinafter "board"), I note that generally, such a board is granted broad authority regarding the management and control of the school. Accord Op. Att'y Gen. 98-018. For example, A.C.A. § 6-64-202 (Repl. 2003) provides in part that the Board of Trustees of the University of Arkansas is "made a body politic and corporate and shall have all the powers of a corporate body, subject to the Constitution and laws of the State of Arkansas." This undoubtedly includes the power to enter into contracts, presumably including employment contracts so long as no law is violated. The powers of the Henderson *Page 12 
State University and University of Central Arkansas boards expressly include "the right to contract and be contracted with." A.C.A. §§ 6-66-102(d)(1)(C) and 6-67-103(d)(1)(C) (Repl. 2003). The Henderson State University board is further expressly authorized to "[h]ire and regulate faculty and staff." Id. at (d)(5)(A). The University of Central Arkansas board is similarly recognized as the employer of university personnel. A.C.A. § 6-67-103(d)(2) ("The board shall have full power and authority from time to time to make, constitute, and establish such bylaws, rules, and orders not inconsistent with law as to them seem necessary for the regulation, government, and control of . . . all officers, teachers, and other persons by them employed in and about theuniversity. . . ." (Emphasis added.)). See also Muse v. Prescott SchoolDist., 233 Ark. 789, 794, 349 S.W.2d 329 (1961) ("The faculty of state supported colleges is employed by a board of directors. . . ."). Other higher education boards are charged generally with "the management and control" of their institutions. E.g. A.C.A. §§ 6-65-202 (Arkansas State University), 6-65-302 (Arkansas Tech University), and 6-65-402 (Southern Arkansas University) (Rep. 2003).
In sum, the negotiation of employment contracts is undoubtedly a matter generally within the province of the board of trustees of a state college or university. With regard to the inclusion of "sabbatical" or "severance" pay as a term of such a contract, as a general proposition I believe such a term probably falls within the board's operational control. Some support for this proposition may be found in the recent case of Gray v. Mitchell, supra, wherein the Arkansas Supreme Court addressed a challenge to the Little Rock School Board's decision to terminate then-superintendent Dr. Roy Brooks without cause and pay him severance pay in accordance with his employment contract. Taxpayers in that case argued that the severance payment did not qualify as an expenditure for "maintenance and operation" under Ark. Const. art. 14, § 3, [3] and that it further violated section 2 of that article, which provides: *Page 13 
 No money or property belonging to the public school fund, or to this State, for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
Ark. Const. art. 14, § 2.
In rejecting these arguments, the court first observed that the only definition of "maintenance and operation" in art. 14, § 3, states that the phrase includes "such expenses for maintenance and operation as may be defined by law." 373 Ark. at 568 (quoting Ark. Const. art. 14, § 3
(d)). It then noted that the taxpayers were not contending the school board violated any statute on school expenditures. Id. Regarding art. 14, § 2, the court reiterated its previous formulation that "a school board, like the legislature, is limited to spending school money for expenses immediately and directly connected with the establishment and maintenance of schools." Id. It next held that any expenditure that satisfies art. 14, § 2 will be one that is "for maintenance and operation" under art. 14, § 3. Id. at 569. The court also reconfirmed a school board's general discretion to determine necessary expenses, along with the court's limited role "to ensure that school money is not diverted to an unrelated purpose. . . ." Id. With regard to the severance payment in question, the court found as a matter of law that the payment satisfied art. 14, § 2. Id. at 570. It therefore followed that the payment was for "maintenance and operation" under art. 14, § 3. The taxpayers had argued that the payment benefited only Dr. Brooks, not the school. But the court countered:
 To the extent that the payment to Dr. Brooks represented severance pay, this argument overlooks the fact that the payment allowed the School Board to remove Dr. Brooks from his position and replace him with a person who, in the School Board's opinion, would be a better superintendent. The School Board, while operating and maintaining the School District's schools, determined that the School District could be operated and maintained in a better manner by a different superintendent. We have no doubt that this is a determination that falls within the `broad discretion . . . vested in the *Page 14 
board of directors of each school district in the matter of directing the operation of the schools.' [Citations omitted.]
Id.
The court further rejected a due process argument against the payment, concluding that "the severance payment was made for the public purpose of removing Dr. Brooks to allow for the hiring of a new, and, in the School Board's judgment, a preferable superintendent to lead the Little Rock Public Schools." Id. at 571.
In my opinion, this case offers persuasive authority for the proposition that a severance payment pursuant to an employment contract entered by a higher education board can meet the test of Ark. Const. art. 14, § 2, and be covered by the institution's appropriation for maintenance and operation.[4] I recognize in this regard that institutions of higher education are unquestionably distinguishable in many ways from school districts, particularly in that the legislature retains the power of appropriation over these institutions. Cf.Muse, supra, 233 Ark. at 794-95 (noting that higher education instructors are state employees, and that "control is in the state" in the case of state higher education institutions). Nevertheless, for purposes of your question, I believe an institution of higher education board's discretion to enter contracts and employ personnel, coupled with its general discretion to direct operations, probably places the institution more in the "quasi-independent" category of a school district. Muse, supra at 793. Accordingly, in my opinion, the absence of express statutory authority to negotiate a severance package in the higher education context is not determinative of whether a board may agree by contract to make a "sabbatical" or "severance" payment upon an employee's resignation or termination. The question instead likely focuses on whether the payment contravenes any limitations under the state's fiscal laws, or is otherwise contrary to statute. As discussed above, according to my review, there are currently no such limitations or proscriptions.[5] *Page 15 
As a general proposition, therefore, I believe it probably would matter whether the institution agreed by contract to make the payment. This assumes of course that the agreement was supported by mutual consideration and that the payment amount was not so unreasonable as to constitute a gratuity in and of itself. Any issues in this regard will involve questions of fact outside the scope of an opinion from this office.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 6-63-309 authorizes state-supported institutions of higher education to exceed the legislatively-established maximum salary levels by no more than 25% for certain academic positions. A.C.A. § 6-63-309(a) (Repl. 2003).
[2] Article 16, § 4 provides:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
One of the issues in Ingram, supra, was whether various state agencies and institutions, including the University of Arkansas and Henderson State Teachers College, could use their "cash funds" to supplement the maximum annual salary as limited in the applicable appropriation act. As recognized by the court, "cash funds," though not derived from taxes, are "public monies." 215 Ark. at 818. See also A.C.A. § 19-4-801(1) (Repl. 2007) (current statutory definition of "cash funds.") The court cited Ark. Const. art. 16, § 4 and concluded: "We hold that when the Legislature fixes the maximum annual salary of an employee, then no state agency or institution may use any part of its cash fund to supplement or enlarge the salary so fixed by the Legislature. . . ."215 Ark. at 821.
[3] Article 14, § 3, provides that all of the money resulting from the uniform ad valorem property tax of twenty-five mills it to be used "solely for maintenance and operation of the schools." Ark. Const. art. 14, § 3 (as amended by Ark. Const. amend. 74).
[4] Under the General Accounting and Budgetary Procedures Law, "maintenance and general operation" in relevant part covers "items of expense necessary for the proper and efficient operation of the . . . institution of higher education. . . ." A.C.A. § 19-4-522(a) (Repl. 2007).
[5] It should perhaps be noted that the question could conceivably also invite analysis in terms of Ark. Const. amend. 33, which in pertinent part prohibits any "transfer" of "vested" power from the board of a state higher education institution unless the institution is abolished or consolidated with another institution. Id. at § 2. A number of previous Attorney General Opinions have addressed the supposed purpose underlying this section of the amendment, which appears to "focus on preserving established institutional prerogatives whose exercise advances the institution's mission." Op. Att'y Gen. 2007-007
at 5. See also Op. Att'y Gen. Nos. 2007-047; 2007-032; 2007-007; 2003-020; 2002-119; 2000-007. I will not speculate further in this opinion regarding Amendment 33 as I have no information suggesting that it is necessarily implicated by your question. I refer you instead to the opinions cited above for insight into this office's historical approach to the amendment. *Page 1